In the Matter of the Rule upon John G. Scouten, to show cause why he should not be removed from his office of attorney. Appeal of John G. Scouten.

*Attorneys-at-law — Disbarment — Suspension — Abusive language addressed to judge.*

The power of courts is ample to maintain propriety of conduct and the discipline of the bar, extending even to disbarment of offenders.

The exercise of such authority is largely a matter of discretion, and will only be reviewed by the superior courts on the ground of abuse.

Where an attorney-at-law, during a session of court, though outside of the courtroom, uses foul and abusive language to an associate judge, unlearned in the law, involving serious charges against the judge, and does not apologize for a long period of time, and only after a rule for disbarment has been entered against him, he may be disbarred altogether or suspended from practice until his conduct shall convince the court that he can and will conduct himself, in all respects, properly and respectfully.

*Attorneys-at-law—Privileges and duties—Subordination to court.*

The bar have great liberty and high privileges in the assertion of their clients' rights as they view them, but on the other hand they have equal obligations as officers in the administration of justice; and no duty is more fundamental, more unremitting, or more imperative, than that of respectful subordination to the court.

Argued March 14, 1898. Appeal, No. 85, Jan. T., 1898, by John G. Scouten, an attorney-at-law, from order of C. P. Sullivan Co., Dec. T., 1897, No. 41, making absolute a rule to disbar him. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Rule to disbar an attorney-at-law.

The facts appear by material portions of the opinion of DUNHAM, P. J., as follows:

Upon the 25th day of October last, the above rule was granted upon John G. Scouten, Esq., a member of the bar of Sullivan county, by the court, upon its own motion, returnable at the then next regular term of the courts of said county, which sat upon December 13, 1897. The rule and the reasons therefor, which reasons were entered in full among the records of the court of common pleas of said county, were directed to be served upon said John G. Scouten, Esq., at once, by giving to him a duly certified copy of the rule, the order of court, and the reasons assigned by the court for issuing said rule, which order was fully complied with on November 5, A. D. 1897. . . .

In the said order of court, John G. Scouten, Esq., was ordered to make formal answer to the matters contained in the rule and reasons upon which the rule was granted, on or before December 13, 1897 at two o'clock P. M. . . .

While the matters alleged in the rule granted upon Mr. Scouten are said to have occurred, and did occur, on October 14, A. D. 1897, and nothing that occurred prior to that date can be of any very great materiality to the case, yet the respondent seeks to in some way excuse or to a certain extent palliate his conduct by referring to former meetings of the court at which Hon. C. Kraus and Hon. John Line, the associate judges, held court, and in which the case of Bush v. Wiggins was being heard, and alleging that it was the understanding and agreement that at the next meeting of the court to hear said case the president judge was to be present, and sit in the hearing of the case, and that it was the violation of this understanding or agreement that incensed him to such an extent as to cause him to lose control of himself, and thus, in a moment of anger and passion, say what he otherwise would not have said.

While we do not mean to insinuate in any way that, even if such were the exact facts in the case, it would in any way excuse, much less justify, the conduct of the respondent, we do feel it incumbent upon us, to state the exact facts in the case, known to the court, in order that the whole truth in the matter may appear upon the records. There had for some time been a rule pending in court to show cause why the judgment of Bush v. Wiggins should not be opened, and the defendant allowed to come in and defend against the claim of the plaintiff. Some evidence had been taken upon this rule prior to May

term of court, and at said term, Hon. John J. Metzger, of the 29th district, holding the term of court, in place of the president judge of the district, who was unable to be present in court on account of sickness in his family, referred the case to the two associate judges to pass upon. As there was considerable business to be disposed of, these associate judges went into either a jury room or the judges' chambers, and an application was made to continue the argument of the case, owing to the depositions not being in proper shape in some way. This application was granted and to accommodate the attorneys, one of whom lived in Dushore, and the other in Wyalusing, the hearing upon the rule was fixed at Dushore, and was held in Mr. Scouten's office. At this hearing it was again continued at request of one of the parties and the hearing fixed at Laporte at the courthouse. The associates fixed the hearing at the courthouse, largely and mainly, because the conduct of Mr. Scouten in the case at his office was such that they did not feel like ever hearing any argument again in which Mr. Scouten was concerned, in any other place except the courthouse, where no questions could be raised as to their authority, or to the regularity of their proceedings; but there was no understanding or agreement whatever about the president judge being present. At the next regular term of court or at September term, the jury trials took up almost the entire time of the court, so that few cases on the argument list were reached. And as the parties in the Bush v. Wiggins case seemed anxious to have the case disposed of as soon as possible, an adjourned court was fixed for October 14, at which that case and one or two other cases or rules were directed to be disposed of, or at least were put down to be heard. At the time this adjourned court was fixed the president judge announced from the bench to all parties that it would not, in all probability, be possible for him to be present upon that occasion, as he expected to be away from the county at that time.

From these facts we are unable to see how it was possible for Mr. Scouten to have been misled as to who was to hear the rules, or to have been disappointed in not having had the president judge present, and thereby to have become irritated.

Upon October 14, 1897, court met at the courthouse to hear the rule in above referred to case, and also to dispose of some

other rules and matters that were to come up at that time, and was held and presided over by Hon. C. Kraus and Hon. John Line, the two associate judges of the county. That these two judges have power to hold the court is too plain for any argument. It would not serve any particular purpose to attempt here to cite authorities showing the authority of associate judges to hold court. Their power to do so is abundantly sustained by authority.

So that the court held upon October 14, by the associate judges was a court of competent jurisdiction and the orders, decrees and decisions of that court were of as much authority and as binding upon all the parties interested as they would have been had the president judge been present and participated in the business of the court.

At this session of the court the case of Bush v. Wiggins had been argued, and the court had made the rule to open the judgment absolute and authorized the defendant to appear in court and defend against the note upon which judgment had been entered. Also the application of John P. McGee to set aside the sale of his real estate by the sheriff had been heard, and the rule to show cause why the said sheriff's sale should not be set aside had been discharged. In this last rule Mr. Scouten was personally interested, as he was one of the purchasers of the real estate of said John P. McGee, the property having been sold in different or separate lots or parcels, and John G. Scouten having purchased one of these lots or parcels at a price, thought by some, to be a high price for the property.

After these proceedings had been taken, and the court had made the decisions and orders set forth above, Judge Kraus had occasion to leave the bench and pass out into the hall or corridor in the rear of the courtroom and down the stairs into the hall or corridor in the first story of the courthouse. Mr. Scouten, after Judge Kraus had left the courtroom, also left the courtroom, taking practically, if not exactly, the same route Judge Kraus had taken. Whether Mr. Scouten did this to follow Judge Kraus up or not, of course, we do not pretend to say, nor do we consider it of any consequence in this case. That he came out after Judge Kraus is not denied. That he descended into the lower hall or corridor after Judge Kraus is not denied. And that he there met Judge Kraus and began

a most indecent and outrageous attack upon Judge Kraus on account of the rulings and decisions of the court is not denied, and that any other cause or controversy whatever existed for this attack is not in any way claimed by the respondent; so that whatever occurred there and whatever attack was made by Mr. Scouten upon Judge Kraus was made solely and entirely, because of the rulings, decisions and actions of the judges in the matters that were before them in court.  When Mr. Scouten met Judge Kraus in the lower corridor of the courthouse he immediately began a most vile and abusive personal attack upon him, using language too vile and obscene for repetition here, or in fact in any place.  One might expect to hear language of the kind used by Mr. Scouten in the lowest slums of a great city, or among the most degraded portions of humanity, but among men who care anything for themselves or for society, such language one would never expect and never ought to hear.  Not only was Judge Kraus most foully abused but the court itself was attacked, its motives impugned and the honesty and fairness of its decisions were openly questioned.  Owing to the character of the charges made against Judge Kraus and the court, and the language in which these charges were clothed, we do not feel at liberty to repeat them here, but merely desire to refer to them as they are spread upon the records in our reasons or foundations for the rule granted in this case, where under a sense of duty we felt compelled to have them put down.  Had this attack been made by Mr. Scouten upon Judge Kraus when there were no persons present to hear the same, it would not have been so flagrant and great an insult to the judge and the court, nor so far-reaching in its consequences to the public, but at the time the attack began there were several persons, members of the bar and others, in the corridor who could not avoid hearing it and the loud and boisterous manner of Mr. Scouten attracted more persons to listen to the disgraceful tirade.  This attack occurred some time before the court adjourned for noon.  And when the noon recess came Mr. Scouten again followed Judge Kraus, this time into the judges' chambers adjoining the courtroom where the two associate judges had gone, and again began an attack upon Judge Kraus, or at least was using loud, unpleasant and abusive language, and when ordered out of this room he stepped

back into the courtroom, and then violently and boisterously, vilely abused Judge Kraus and also the court and court rules, and among other things dared Judge Kraus to come down into the court yard to engage in a personal combat with him. . . .

It is clear that the court has the undoubted right to strike an attorney from the rolls for attacking or insulting a judge on account of any ruling or decision made in court. If the court has this right, and if it is their duty as was intimated by Justice FIELD to act in such cases, surely no one can for one moment contend that the present case is not one demanding the action of the court. In all the cases reported none can be found that in any degree approaches this one for insulting and abusive language, or for the extent to which the same was carried, even to the extent of threatening personal chastisement upon the judge. Indeed the respondent has virtually relieved us of all question as to the propriety of the action of the court by coming into court and expressly admitting the power of the court in the matter, and also admitting that the court could not in justice to itself and to the judiciary have done less than it has done, and that the offense deserves that this rule be made absolute. But he seeks to avoid the judgment of the court, that he virtually admits justice demands by humbly apologizing to the court and to Judge Kraus for his conduct, and throws himself upon the mercy of the court, asking us to forgive his shortcomings and offenses, and promising to do differently in the future.

No one can for one moment question that the apology is as full and complete as able and astute counsel could make it. And were we convinced it came from the heart, and was prompted and made because his conscience upbraided him for the great wrong and insult he had put upon the court, and would not permit him to rest until he had made the fullest apology and the most ample amends for such conduct, we should feel disposed to accept it and dismiss this rule with an admonition to the respondent that in future he must so conduct himself that no further or future occasion should ever arise of a similar character. While we have the greatest respect for any person who, upon being convinced of an error, takes the first opportunity to apologize and make amends for the wrong done or the injury committed because he believes justice, fair dealing and honesty demand he should do so, we have no respect for the

person who declines or neglects to apologize or render a just and proper amend for a wrong done or an injury committed until he is convinced such a course is necessary to save him from punishment for such conduct. A person who makes an apology because he fears that unless he does so he will receive merited punishment, is a hypocrite and coward, and an apology wrung from him in that way is entitled to no merit or consideration.

Let us then consider the circumstances in this case in order to see what weight or consideration we ought to give this apology and appeal for mercy. On October 14, the occurrence took place that is the foundation for this rule. The first attack was in the forenoon. Some forty-five or sixty minutes after this attack, after full opportunity to cool and reflect upon his conduct, the respondent renewed the attack and continued the same abuse. Nothing was done by the court in the matter until the afternoon of the 25th of the same month, when the entry of the facts in the case was made and the present rule granted. Court had been in session that forenoon, and the respondent had been present in court arguing matters before the court. Yet he made no attempt to apologize or in any way show any regret for his conduct. Court was again in session on November 4, and it was generally known that the above rule had been granted and upon what it was founded, although it had not then been served upon the respondent and then no sign of regret or apology came from the respondent. Not until the very day upon which the respondent was required to make answer, did he in any way attempt to atone for the abusive attack he had made upon Judge Kraus. Then he comes into court with a typewritten apology, in a full and complete form, but very evidently gotten up and written by his able and adroit counsel, who presented it, signed it is true by respondent, but in all probability, that was about all he had to do with the instrument. He does not publicly acknowledge his wrong further than by having his counsel present his written answer, and appeal for mercy.

Did respondent upon October 25, know and realize the enormity of the offense he had committed? If he did it was his duty to apologize. If he knew it and refused to apologize, he cannot now complain because, we refuse to be satisfied with his late apology, as his conduct by so doing, shows that he is not a

proper person to remain as an officer of a court he had so grossly wronged and insulted, realizing his guilt, yet refusing to apologize. If he did not know, feel and realize that he had committed a great wrong upon the court, and only was able to find that out from his able counsel, surely he is not a proper person to remain an officer of the court.

It is unnecessary here to discuss the great responsibility resting upon attorneys, and the necessity of having only such persons as attorneys, whose character and personal standing are above reproach. Great efforts are being made to keep out of the bar all unworthy persons and all who are not fully qualified to perform their duties as attorneys. The bar should have among its members, no person who is not a gentleman or lady in the fullest sense of the word, and no person who does not fully realize and faithfully live up to the obligations he takes to conduct himself honestly and faithfully to courts and his clients in all respects and under all circumstances.

If we are in error in feeling and holding that the present apology of respondent, comes too late, and is not sufficient to convince us of its genuineness and of his sincerity in making it we can only say that respondent has it in his power to so live and conduct himself as to show and convince all who know him, of his determination to govern his temper and tongue, and when he has, by long persistence in this course, shown to us, that he has succeeded and can conduct himself in all respects, properly and respectfully, we shall cheerfully hear his application for readmission and act favorably thereon.

Now, January 17, 1898, this case having been heard and fully argued by counsel, the rule heretofore granted to show cause why John G. Scouten, Esq., should not be removed from his office of attorney of this court and his name stricken from the rolls is made absolute, and John G. Scouten, Esq., is removed from his office of attorney of this court and his name stricken from the rolls.

*Error assigned* was the order of court.

*D. C. De Witt*, for appellant.—The respondent admitted his great wrong upon his first appearance in answer to the rule.

He is here complaining that his punishment has been too severe. He is here complaining that his apology was not accepted.

We feel safe in saying we do not believe a case can be found where the rule has not been discharged if the words spoken were retracted, apologized for and forgiveness asked. A lawyer's profession is his property, and to take all his property from him for life, simply because by accident, without premeditation, without malice, without motive, but, while greatly irritated and excited and angry he used language confessed by him to be wrong and humbly begged to be forgiven for it, is not in keeping with Christian conduct, nor teaching.

In Matt., XVIII., 21, may be found these words: "Then came Peter to him and said, Lord, how oft shall my brother sin against me, and I forgive him? till seven times? Jesus saith unto him, I say not unto thee, Until seven times: but, Until seventy times seven." We do not ask this. Forgive us this once and our conduct shall be such that you will not be asked to forgive the second time. This is our position and this expresses our feelings: We have done wrong, we confess it. We ask to be forgiven. We ask you to follow the law as laid down in Luke, XVII., 3: "Take heed to yourselves: If thy brother trespass against thee rebuke him; and if he repent, forgive him."

*Henry C. Parsons*, with him *Thomas J. Ingham* and *F. H. Ingham*, for the court of common pleas of Sullivan county, cited Bradley v. Fisher, 13 Wall. 335; Austin's App., 5 Rawle, 204; Williamson's Case, 26 Pa. 24; Dickens's Case, 67 Pa. 177; Davies's Appeal, 93 Pa. 118; Serfass's Case, 116 Pa. 456; Smith's App., 179 Pa. 14.

OPINION BY MR. JUSTICE MITCHELL, May 26, 1898:

The appellant was disbarred for using very foul and abusive language involving serious charges against his integrity to one of the associate judges of the court below, during a session of the court, though outside of the courtroom. The court subsequently entered a rule upon him to show cause why his name should not be struck from the roll of attorneys, and the appellant then filed a written apology which the learned president judge considered would have been sufficient, at least to mitigate

the punishment, had it not been so long delayed. The rule was made absolute, and the appellant now comes before us admitting his misconduct, but claiming that the punishment is excessive.

There is no question of the jurisdiction of the court below. The bar have great liberty and high privileges in the assertion of their clients' rights as they view them, but on the other hand they have equal obligations as officers in the administration of justice, and no duty is more fundamental, more unremitting or more imperative than that of respectful subordination to the court. The foundation of liberty under our system of government is respect for the law as officially pronounced. The counsel in any case may or may not be an abler or more learned lawyer than the judge, and it may tax his patience and his temper to submit to rulings which he regards as incorrect, but discipline and self-restraint are as necessary to the orderly administration of justice as they are to the effectiveness of an army. The decisions of the judge must be obeyed because he is the tribunal appointed to decide, and the bar should at all times be the foremost in rendering respectful submission.

That the conduct of the appellant was a most serious breach of discipline is not denied, and his appeal is practically for mercy. Mercy however is not the prerogative of this Court, and the considerations which might have moved the court below in that respect are not for us to entertain. The punishment of appellant is severe, in view of the fact that it involves no moral turpitude, but only infirmity of temper. If the disbarment were meant to be irrevocable we might have some doubt whether it would not exceed the limit of legitimate discretion, but we observe the remarks of the learned president judge that "the respondent has it in his power to so live and conduct himself as to show and convince all who know him of his determination to govern his temper and tongue, and when he has by long persistence in this course shown to us that he has succeeded, and can conduct himself, in all respects, properly and respectfully, we shall cheerfully hear his application for readmission and act favorably thereon." This is a clear indication that the court below regarded its action rather in the light of a suspension than of a permanent disbarment, and intended to treat the appellant with as much leniency as the preservation of necessary dis-

cipline would admit.   We have no reason to suppose that, with
proper behavior on the part of appellant, the period of proba-
tion will be unduly prolonged.   More than that he cannot fairly
ask.

Order affirmed.