# Reese's Estate.

*Attorney at law—Professional conduct—Interference with order of support—Assignment of interest in estate.*

An attorney at law with knowledge of an order of support against his client and of arrearages of payment thereon, loaned his client money from time to time without attempting to control its application, and subsequently took an assignment of the latter's interest in an estate in payment of or to secure payment of the indebtedness thus incurred. *Held,* that the acts of the attorney did not amount to a breach of professional duty, or an unlawful interference with the execution of the order of support, or warrant an inference of fraud on his part to defeat the claim of client's wife.

Argued April 15, 1909.  Appeal, No. 54, April T., 1909, by E. R. Edmundson, from decree of O. C. Allegheny Co., April T., 1908, No. 121, dismissing exceptions to adjudication in Estate of William R. Reese, deceased.  Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ.  Reversed.

Exceptions to adjudication.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in dismissing exceptions to adjudication.

*L. C. Barton,* with him *E. R. Edmundson,* for appellant.

*John D. Watson,* for appellee.

OPINION BY RICE, P. J., October 11, 1909:

In August, 1907, Henry H. Reese, being then under an order of the court of quarter sessions in desertion and support proceedings directing him to pay to his wife $3.00 per week for her maintenance, and being also largely in arrear, made a written assignment under seal to the appellant of all his right, title, interest and claim in the estate of the decedent, his brother, and by the same instrument directed the administrator of the estate to pay his full distributive share under the administrator's first and subsequent accounts to the appellant. The appellant's testimony as to the consideration is to the effect, and is uncontradicted, that prior to the date of the assignment he had made successive advancements to the assignor to the amount of two judgment notes, one for $200 and the other for $250, which he entered of record before the first administration account was filed. Upon distribution of the balance shown by that account the sum of $121.43 was awarded to the appellant out of the assignor's distributive share ($309.43) the balance having been taken credit for by the administrator as paid to Henry prior to the filing of the account. Henry's distributive share of the balance shown by the final administration account, upon distribution of which the present dispute arose, is $205.96. It is thus seen that, if the appellant's claim under the assignment of August 7, 1907, is allowed to prevail over the claim of the appellee under the order of maintenance, the judgment entered thereon in the common pleas in April, 1908, in accordance with the provisions of the Act of May 8, 1901, P. L. 143, and the attachment execution issued on that judgment and served on the administrator in the same month, the whole amount received by the appellant under the assignment will be less than the amount of the debt for which it was given. Therefore, any inference of fraud on the ground of inadequacy of consideration would be wholly unwarranted.

After speaking of the advancements above mentioned, the appellant testified that he made "subsequent advancements and included them in a mortgage amounting to $800," on Henry's interest in decedent's real estate, which as a whole was worth between $8,000 and $9,000, and that this interest was

levied on and sold on that mortgage. The evidence does not show who became the purchaser or the amount realized, and the natural interpretation of the testimony above referred to, which is all there is relative to the mortgage and its connection with the present litigation, is that it was given for the subsequent advancements, and not for all the advancements. But, even if it be assumed, which is by no means clear, that the assignment was not absolute but was taken simply as collateral security for the first advancements, also that the mortgage was taken as additional security for these as well as the subsequent advancements, still, in the absence of evidence that the appellant became the purchaser at the sale upon the mortgage, or of the amount realized, or of fraud in the conduct of the sale in which the appellant participated, a finding that the debt for which the assignment was given was discharged by the sale of the real estate would be without support.

"The bar has great liberty and high privileges in the assertion of their clients' rights as they view them, but on the other hand they have equal obligations as officers in the administration of justice, and no duty is more fundamental, more unremitting or more imperative than that of respectful subordination to the court:" Scouten's Appeal, 186 Pa. 270. This principle is referred to by the learned orphans' court as applicable to the present case, and its decree is based largely, if not altogether, upon a supposed breach on the part of the appellant of his professional duty. Indeed, the learned judge says: "A stranger acting in good faith might no doubt acquire title to his (Henry's) inheritance for value, notwithstanding the existence of the order of maintenance, but Edmundson stood in professional relation, owing a duty of submission to the judgment of the court, Scouten's Appeal, 186 Pa. 270, and has done everything in his power to thwart the efficiency of that judgment. His declared purpose was to benefit his client alone in making his advancements, and, therefore, to defeat the order of maintenance." In another part of the opinion it is said, "His conduct was a plain breach of professional duty," and further on, "Edmundson's interference with the execution of the order of maintenance was an interference with the admin-

istration of justice of which he ought not to be permitted to take advantage," and in conclusion, "It follows that the assignment offered in this case was part of a scheme to defeat Mrs. Reese's claim for maintenance and must fail." These extended excerpts from the vigorous opinion of the learned president judge of the orphans' court showing plainly the grounds of decision necessitate a careful scrutiny of the evidence concerning the question as to the professional relation between the appellant and Reese at the time of the advancements and the assignment, and also concerning the acts which are supposed to constitute the interference with the administration of justice. It is to be borne in mind that the order of maintenance was made in 1904, but was not entered as a judgment in the common pleas until 1908, which was several months after the date of the assignment. The testimony both of the appellee and the appellant is that J. F. Edmundson, the appellant's father, appeared as Reese's attorney in the desertion and support proceedings in the quarter sessions. While there is evidence that they occupied the same office, we discover none to sustain a finding that they were partners. True, the appellee gave an affirmative answer to her counsel's very leading and suggestive question, "Then young Mr. Edmundson acted as attorney when you went to the office to speak about your husband, and John F. was the attorney in court?" But when her testimony is examined to ascertain upon what facts she based this conclusion it is found that they are, first, that when she went to the office to ask about her husband the appellant answered her questions, but what they were is not stated; second, that on one occasion he proposed that she accept money to procure a divorce. This, however, she says was on the day of the sale of the real estate on the mortgage and is not shown to have occurred before the date of the assignment. The appellant denies that he ever saw her until about the time the second account was filed, but taking the appellee's testimony for verity it is insufficient to establish the fact that the relation of attorney and client existed between the appellant and Reese at or prior to the time the former took the assignment or made the advancements for which it was given. It

appears at one time Reese and his wife resumed marital relations temporarily, and there is some evidence that he induced her to this, because, as he supposed, it would in some way relieve him from the order of support. But there is absolutely no evidence direct or otherwise to warrant an inference that the appellant advised him to resort to this expedient or even knew his motive. How, then, it can be supposed that the purpose of the appellant to defeat the order of maintenance is shown by Reese's course in resuming temporary marital relations, it is impossible to see. There is one other fact to be noticed, namely, that the appellant made the advancements with knowledge of the existence of the order of maintenance, and so far as appears made no effort to control the application of the money to the discharge of the arrears. Looking only at the facts and inferences legitimately deducible from the evidence sent up with the record, the case, stated as favorably for the appellee as the evidence justifies, amounts to this: The appellant, a member of the bar, with knowledge of the order of the quarter sessions, and of Reese's delinquency in paying the installments, lent Reese money from time to time without attempting to control its application, and subsequently took an assignment of the latter's interest in payment of or to secure payment of the indebtedness thus incurred, the consideration for the assignment being full and adequate. The record of the testimony is not as full as to some details as is desirable, and if all the facts relative to the claim had been fully developed it may be that a different case would be presented. Certainly a stronger case in favor of the claim would have been presented if all the facts alleged in the petition for rehearing had been brought out. But taking the case as we find it, we are unable to conclude that the acts of the appellant amounted to a breach of professional duty, or an unlawful interference with the execution of the order of maintenance or warrant an inference of a fraudulent intention on his part to defeat the appellee's claim. On the contrary, we are constrained by the evidence to the conclusion that the validity of the claim was established and that there is no sufficient legal or equitable reason for disallowing it or postponing it to that of the appellee. The decree is amended

and corrected in accordance with the foregoing opinion by substituting the name E. R. Edmundson in the place of Sadie Reese where it appears in the schedule of distribution, then the record is remitted to the orphans' court to the end that the decree as thus amended and corrected be carried into effect.