Tenenbaum *v.* Caplan.
Mallin Appeal.

Argued November 10, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

I. *Raymond Kremer,* with him *Neil H. Stein,* and *Kremer, Krimsky & Luterman, P. C.,* for appellant.

*John T. Quinn* and *Herbert Somerson,* for appellees.

*Hermann Rosenberger, II,* Assistant Attorney General, with him *Dante Mattioni,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MANDERINO, September 19, 1973:

The appellant, Dr. Aaron W. Mallin, who appeared as a witness in a personal injury action, was summarily punished for a direct criminal contempt of court. He was ordered to pay a $100 fine or undergo a five-day confinement in the county prison. The appellant's petition for reconsideration was denied by the trial court and this appeal followed.

The appellant was called as an expert medical witness on behalf of the plaintiff who alleged injuries to his nervous system that resulted in epileptic seizures. On direct examination, the appellant was asked about the occupational limitations of an epileptic. The following colloquy occurred: "Q. Doctor, would there be any limitation on an epileptic so far as would there be certain occupations which would not be permitted or

practical? A. Yes. We would certainly recommend that an individual with epileptic seizures not work at heights where he can fall, have other injuries. He could fall during a spell and perhaps kill himself or have other injuries. He should not work with machinery because he might fall into machinery and kill himself or damage the machinery and perhaps cause damage to other people who are working nearby. These are the main things that are forbidden occupationally, but in many activities they should be very cautious about going swimming alone. They should avoid contact sports where they might have other head injuries, minor or major. I think there's still a law in the Commonwealth of Pennsylvania dating back to 1915 that states that people with seizures are not allowed to get married, but I don't know whether that law has been eliminated, but there was a law in 1915. [DEFENSE COUNSEL]: I object to that and move to strike it out. THE COURT: Doctor, your qualifications as a physician have not been disputed in any substance; your qualifications as a lawyer have. THE WITNESS: I'm not acting as a lawyer. I'm just stating what I think. THE COURT: Confine yourself to medicine, if you please. Q. How about the driving of an automobile? Is that permitted medically for an epileptic? A. I wouldn't permit it. I think any neurologist would forbid an epileptic to drive, and I'm not allowed to talk about the law, but I think there's some law about it. I would not permit an epileptic to drive a car unless he is free of seizures, in my opinion, for at least one year, and I think this law that I can't talk about says two years, but— Q. Doctor— THE COURT: You're very adroit about that, doctor. Confine yourself to the medicine, please, and not what you're not allowed to talk about. THE WITNESS: Yes, sir. I'm sorry."

After recessing for the day, the trial court requested that everyone except the appellant and counsel leave

the courtroom. He then thoroughly chided the appellant for his conduct as a witness, found the appellant guilty of contempt and levied the fine of $100 payable within twenty-four hours, or confinement in the county prison for five days.

The parties have raised various issues including the motivation of the witness at the time of the alleged contempt. There is no need to consider any of these matters because in our opinion the appellant's conduct did not involve a contempt of court within the applicable statute.

The Act under which the appellant was convicted narrowly restricts the cases in which a court may inflict summary punishment for contempt. Act of June 16, 1836, P.L. 784, §23, 17 P.S. §2041. The trial court relied on that portion of the statute which permits summary punishment for ". . . the misbehavior of any person in the presence of the court, thereby obstructing the administration of justice."

A conviction under the above statute requires a finding of conduct that amounts to misbehavior in the presence of the court and a further finding that the misbehavior obstructed the administration of justice. The only conduct in this case providing a basis for the trial court's finding of misbehavior which obstructed the administration of justice was the colloquy quoted earlier. We have serious reservations as to whether the appellant's conduct in answering questions on direct examination can be considered misbehavior. Even if it were, however, the statute requires that there be an obstruction of the administration of justice which is not present in this case. There was no interruption of the trial. There was no disruption of the proceedings. Under such circumstances, we cannot find that appellant's conduct obstructed the administration of justice. There was, therefore, no basis for the contempt order.

Judgment reversed.