393 A.2d 386

**COMMONWEALTH of Pennsylvania**

v.

**George STEVENSON.**

**Appeal of Martin STANSHINE, Esq.**

Supreme Court of Pennsylvania.

Argued Jan. 19, 1978.

Decided Oct. 5, 1978.

Reargument Denied Nov. 9, 1978.

Defender Assn. of Phila., Benjamin Lerner, Defender, Jonathan Miller, Asst. Public Defender, John W. Packel, Chief, Appeals Div., Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Glen Gitomer, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POM-
EROY, NIX, MANDERINO and LARSEN, JJ.

OPINION

POMEROY, Justice.

Appellant Martin Stanshine, a lawyer, was adjudicated in
contempt of court and sentenced to pay a fine of five
hundred dollars. Because this case involves a direct criminal
contempt in a court of common pleas, a direct appeal was
brought here.[1]

Appellant represented George Stevenson, a defendant in a
criminal case. The record discloses that the trial judge in
this case frequently addressed the members of the jury
panel as "good jurors" during his voir dire instructions.
Part of these instructions dealt with the jurors' duty to
follow the law as determined by the court, and in an
apparent effort to stress the point, the trial judge stated: "I
am the law. I am the law. There is no other law save me."
After all the evidence was in and the parties had rested,
appellant gave his closing address to the jury. He began his
summation with the following:

"Thank you, Your Honor.

"Ladies and gentlemen of the jury, here is the way it
works from here on. *First the good guys get to speak to
you, that's me.* Then the district attorney gets to speak to
you later. There will be nothing after that today.

"*Tomorrow morning, good jurors, the Law will talk
with you, and we will end up with enough of the facts to
make it look like Mr. Stevenson is guilty.*"

"Now, first I want to point out some of the law before
we get into the facts."

(Emphasis supplied.)

At the completion of appellant's summation, the trial judge
excused the jury and had the court reporter read back the

1. We hear this appeal pursuant to the Appellate Court Jurisdiction
Act, Act of July 31, 1970, P.L. 673, No. 223 art. II, § 202(5), 17 P.S.
§ 211.202(5) (Supp.1978), since superseded by Section 722(4) of the
Judicial Code, 42 Pa.C.S. § 722(4) (effective June 28, 1978).

remarks quoted above. Appellant was thereupon found in contempt.

## I.

█ The power to impose summary punishment for contempt, while inherent in all courts, see, e. g., *Levine Contempt Case*, 372 Pa. 612, 618, 95 A.2d 222, *cert. denied*, 346 U.S. 858, 74 S.Ct. 72, 98 L.Ed. 371 (1953); *Snyder's Case*, 301 Pa. 276, 152 A. 33 (1936); ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 7.1 (Approved Draft, 1972), is limited in this Commonwealth by the Act of June 16, 1836, P.L. 784, § 23, 17 P.S. § 2041 (1962).[2] That statute provides:

"The power of the several courts of this Commonwealth to . . . inflict summary punishments for contempts of court shall be restricted to the following cases, to-wit:

"I. To the official misconduct of the officers of such courts respectively;

"II. To disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court;

"III. To the misbehavior of any person in the presence of the court, thereby obstructing the administration of justice."

Appellant's contention that the evidence was insufficient to support the conviction must be evaluated in light of this statute.

█ Appellant first argues that he could not be convicted under subsection I of the Act of 1836, *supra*. We disagree. Although it has been suggested that subsection I does not include misconduct by attorneys, see *Commonwealth v. Garrison*, 478 Pa. 356, 386 A.2d 971, 977 (1978) (plurality opinion); *In re Johnson*, 467 Pa. 552, 556, 359 A.2d 739 (1976), we think that such a construction of the statute ignores well settled principles recognized by both the legislature and this Court. "Persons admitted to the bar of the courts of this

2. Now codified in Section 4131 of the Judicial Code, 42 Pa.C.S. § 4131 (effective June 28, 1978).

Commonwealth and to practice law pursuant to general rules . . . thereby hold the office of attorney at law." Judicial Code § 2521, 42 Pa.C.S. § 2521. Upon admission to the bar, each lawyer swears to "discharge the duties of my office with fidelity, as well to the court as to the client." *Id.* § 2522, 42 Pa.C.S. § 2522.[3] Our cases also recognize an attorney's position as an officer of the court. *E. g., In re Shigon*, 462 Pa. 1, 10–11, 329 A.2d 235 (1974); *In re Schofield*, 362 Pa. 201, 204 & n. 1, 66 A.2d 675, 677 & n. 1 (1949); *Scouten's Appeal*, 186 Pa. 270, 279, 40 A. 481 (1897). See also Pa.R.D.E. 103. We know of nothing indicating a legislative intent that the term "officers of such courts" in subsection I of the Act of 1836 is to be read in any context other than its common legal meaning, and we are not at liberty to construe it differently. Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1903(a), 1921(b) (Supp.1978).[4]

**3.** Section 2522 of the Judicial Code replaces, without substantive alteration, the former statutory oath contained in the Act of April 14, 1834, P.L. 333, No. 614, § 69, 17 P.S. § 1603 (1962).

**4.** We recognize that the United States Supreme Court has reached a different conclusion with respect to the federal contempt statute, 18 U.S.C. § 401 (1969), in *Cammer v. United States*, 350 U.S. 399, 76 S.Ct. 456, 100 L.Ed. 474 (1956). But the reasoning in *Cammer* is based on a detailed legislative history in Congress, see 350 U.S. at 403–08, 76 S.Ct. 456, 100 L.Ed. at 477–79, which we do not have in Pennsylvania, and which differs substantially from what we perceive to be the intent of the General Assembly in framing the Pennsylvania statute. It may be noted, however, that the Act of 1836 is a reenactment of the Act of April 19, 1809, 5 Sm.L. 55, which seems to have been primarily concerned with removing the power of the courts to issue and adjudicate contempt attachments for out-of-court publications. See *Respublica v. Oswald*, 1 Dall. 319 at 329 note (a), 1 L.Ed. 155 (Pa.1788) (F. Brightly ed. 1889).

Moreover, as appellant points out, Brief for Appellant at 18 n. *, the Pennsylvania statute also differs from the federal act in that "officers" appears in both subsection I and subsection II, which permits the summary imposition of contempt sanctions for "disobedience or neglect . . . of or to the lawful process of the court." It would be incongruous to conclude either that "officers" has one meaning for subsection II and another for subsection I, or that a lawyer could not be held in contempt under subsection II for refusal to obey "the lawful process of the court." Compare *In re Galloway*, 480 Pa. 1, 389 A.2d 55 (1978) (plurality opinion).

Nor do we find it controlling that an attorney's misconduct may also be punished through proceedings of the Disciplinary Board of

■ With the foregoing in mind we turn to the sufficiency of the evidence under subsection I. It is axiomatic that the trial court must accord defense counsel in a criminal case "every reasonable latitude"[5] in presenting his case to the jury through the "fearless, vigorous and effective performance of every duty pertaining to the office of advocate on behalf of every person whatsoever." *Sacher v. United States*, 343 U.S. 1, 13, 72 S.Ct. 451, 457, 96 L.Ed. 717, 726 (1952). This does not mean, however, that the trial judge is required to indulge any and all tactics or ploys in which counsel sees fit to engage. See generally *Commonwealth v. Ryder, supra* note 5; ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge §§ 5.4, 5.5, 5.7 and Commentary (Approved Draft, 1972). And while it must be admitted that the line between zealous advocacy and improper conduct may at times be a fine one, it is our view that appellant's conduct could properly be found to have crossed that line in this case.

■ The requirements of the Code of Professional Responsibility, which have been adopted by this Court, Pa.R. D.E. 203(a); 438 Pa. xxv (1970), apply to defense counsel as well as to prosecutors, see *Commonwealth v. Starks*, 479 Pa. 51, 56, 387 A.2d 829, 831 (1978); *Commonwealth v. Harvell*, 458 Pa. 406, 411–12, 327 A.2d 27, 30–31 (1974), and the violations of the Code in appellant's summation are to us evident. In referring to himself (and, necessarily, his client) as "the good guys," appellant violated Disciplinary Rule 7–106(C)(4), 438 Pa. xxv, ci–cii (1970), which provides:

this Court. To the contrary, Rule 201(b) of the Pennsylvania Rules of Disciplinary Enforcement provides:

"Nothing contained in these rules shall be construed to deny to any other court such powers as are necessary for that court to maintain control over proceedings conducted before it, such as the power of contempt, nor to prohibit bar associations from censuring, suspending or expelling their members from membership in the association."

See also *In re Schofield, supra*, 362 Pa. at 214, 66 A.2d at 682.

5. *Commonwealth v. Ryder*, 467 Pa. 484, 489, 359 A.2d 379 (1976).

"(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

> \*   \*   \*   \*   \*   \*

"(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, . . . or as to the guilt or innocence of an accused; . . ."[6]

Having thus identified himself and his cause with the side of right, appellant proceeded to place the trial judge on the other side when he said: "Tomorrow morning, good jurors, the Law will talk with you, and we will end up with enough of the facts to make it look like Mr. Stevenson is guilty." We cannot equate this expression of personal belief with proper advocacy; it could quite properly be determined by a fact finder that the remark was a prediction that the trial judge's summary of the evidence would be biased in favor of the prosecution. Such a statement is condemned by Disciplinary Rule DR 7–106(C)(6), 438 Pa. at cii, which provides that a lawyer shall not "[e]ngage in undignified or discourteous conduct which is degrading to the tribunal." *Accord,* ABA Project on Standards for Criminal Justice, Standards Relating to the Defense Function § 7.1(a), (c) (Approved Draft, 1971). The reasons for this rule have been well summarized in the Standards as follows: "The obligation of the lawyer to maintain a respectful attitude toward the court is 'not for the temporary incumbent of the judicial office,' but to give due recognition to the position held by the judge in the administration of law. The lawyer, by his attitude, communicates to the laymen in the courtroom the professional relation which exists between judge and lawyer." *Id.* § 7.1(c), Commentary (citation omitted). See also *Scouten's Appeal, supra,* 186 Pa. at 279, 40 A. 481.

6. *Accord,* ABA Project on Standards for Criminal Justice, Standards Relating to the Defense Function § 7.8(b)–(c) (Approved Draft, 1971):
    "(b) It is unprofessional conduct for a lawyer to express his personal belief or opinion in his client's innocence or his personal belief or opinion in the truth or falsity of any testimony or evidence

    .   .   .

    "(c) A lawyer should not make arguments calculated to inflame the passions or prejudices of the jury."

■ This is not a case in which ill-chosen language was uttered by a layman who could not necessarily be expected to know of courtroom standards, *Eaton v. City of Tulsa*, 415 U.S. 697, 94 S.Ct. 1228, 39 L.Ed.2d 693 (1974), or where an attorney's overstepping of ethical boundaries in advocating his client's cause must be viewed as *de minimis*. See *Commonwealth v. Garrison, supra*. Instead, the accusation of bias here, seemingly deliberate, is similar to those found to be contemptuous in *United States v. Schiffer*, 351 F.2d 91 (6th Cir. 1965), *cert. denied*, 384 U.S. 1003, 86 S.Ct. 1914, 16 L.Ed.2d 1017 (1966), in which counsel accused the court of running a "drum head court martial" and a "star chamber proceeding," and *In re Buckley*, 10 Cal.3d 237, 110 Cal.Rptr. 121, 514 P.2d 1201 (1973), *cert. denied*, 418 U.S. 910, 94 S.Ct. 3202, 4 L.Ed.2d 1156 (1974), in which counsel charged, "[t]his Court obviously doesn't want to apply the law." See also *MacInnis v. United States*, 191 F.2d 157, 159 (9th Cir. 1951). We think it could be properly found that appellant, when he made the remarks in question, knew or reasonably should have known that his conduct was wrongful. See *United States v. Seale*, 461 F.2d 345, 368 (7th Cir. 1972).[7] In short, we believe that the remarks here were so far beyond the line that separates proper advocacy from conduct "degrading to the tribunal" as to be sufficient to warrant a contempt conviction for "official misconduct of [an] officer[ ] of [the] court[ ]" under subsection I of the Act of 1836, *supra*.[8]

**7.** Appellant does not attempt to justify his remarks as proper advocacy, but insists that they were ambiguous and were not intended to cast a charge of bias at the court. If so, his words could hardly have been more ill-chosen. Although it is true that a lower court's judgment that an act is contemptuous is not conclusive, and although it is possible that appellant's intention was different from that manifested by the evident meaning of his words, we are unable to conclude that this possibility renders the evidence insufficient. See *Levine Contempt Case, supra*, 372 Pa. at 620–21, 95 A.2d 222; *Messmore's Estate*, 293 Pa. 63, 72–73, 141 A. 724 (1928); *In re Contempt of Myers and Brei*, 83 Pa.Super. 383, 387–88 (1924).

**8.** We do not read *In re Little*, 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972), upon which appellant relies, as establishing any federal constitutional requirement that to be contemptuous one's actions must actually cause a violent disruption of the proceedings; indeed,

## II.

As noted above, the lower court made its contempt adjudication out of the hearing of the jury as soon as appellant had completed his summation. The entire adjudication consisted of the following:

"THE COURT: Mr. Reporter, read me back the opening lines of counsel's address to the jury.

(A portion of the testimony [sic] was repeated by the court reporter.)

THE COURT: I thought you said that. That was a highly contemptible statement. You are in contempt of this court.

MR. STANSHINE: I didn't mean that.

THE COURT: That is a highly irresponsible statement to make. You are in contempt of court. You are fined 500 dollars. I will report you, sir, to appropriate authorities to inquire into your irresponsibility.

MR. STANSHINE: I wish to appeal—

THE COURT: You will appeal in due course."

Appellant attacks the use of a summary procedure here, and while we do not accept the broad outlines of his argument, we do think that it has merit in the particular circumstances of this case.

■ Summary proceedings for contempt of court are those in which the adjudication omits the usual steps of "the issuance of process, service of complaint and answer, holding hearings, taking evidence, listening to arguments, awaiting briefs, submission of findings, and all that goes with a conventional court trial." *Sacher v. United States, supra,* 343 U.S. at 9, 72 S.Ct. at 455, 96 L.Ed. at 724. Although the exercise of this power has long been sanctioned, there is

United States v. Wilson, 421 U.S. 309, 314–16, 95 S.Ct. 1802, 44 L.Ed.2d 186, 192–93 (1975) is to the contrary. See also *In re Buckley, supra,* 10 Cal.3d at 246–55, 110 Cal.Rptr. 121. *Little* instead seems to have turned on the lack of any evidence to support the trial court's finding that the defendant's statements "directly tended" to disrupt the proceedings, as required by the state contempt statute there involved. See *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 6 L.Ed.2d 654 (1960).

little doubt that the remedy is a drastic one. What Mr. Chief Justice Taft said concerning the distinction between summary and nonsummary criminal contempts has relevance here:

> "We think the distinction finds its reason not any more in the ability of the judge to see and hear what happens in the open court than in the danger that unless such an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public in the 'very hallowed place of justice,' as Blackstone has it, is not instantly suppressed and punished, demoralization of the court's authority will follow. Punishment without issue or trial was so contrary to the usual and ordinarily indispensable hearing before judgment constituting due process that the assumption that the court saw everything that went on in open court was required to justify the exception; but the need for immediate penal vindication of the dignity of the court created it." *Cooke v. United States*, 267 U.S. 517, 536, 45 S.Ct. 390, 394, 69 L.Ed. 767, 773–74 (1925).

■■■ It is precisely because "the necessities of the administration of justice require such summary dealing . . [as] a mode of vindicating the majesty of law, in its active manifestation, against obstruction and outrage to it," *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11, 16 (1954), that the summary contempt power has been upheld against due process attacks, see, *e. g., Cooke v. United States, supra*, 267 U.S. at 534, 45 S.Ct. 390, 69 L.Ed. at 773; *Ex parte Terry*, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888), and we therefore decline to adopt appellant's argument that summary adjudication is *per se* unconstitutional.[9]

9. It should be noted that when the summary contempt power is exercised, there should normally be afforded "at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment." ABA Project on Standards for Criminal Justice, Standards Relating to the Trial Judge § 7.4 (Approved Draft, 1972). See *Id.*, Commentary; *Taylor v. Hayes*, 418 U.S. 488, 498, 94 S.Ct. 2697, 41 L.Ed.2d 897, 907–08 (1974); *Groppi v. Leslie*, 404 U.S. 466, 504, 92 S.Ct. 582, 30 L.Ed.2d 632, 639 (1972); *Commonwealth v. Patterson*, 452 Pa. 457, 460, 308 A.2d 90 (1973). The record indicates that such

But it is clear that the guiding principle should be "that only ' "[t]he least possible power adequate to the end proposed" ' should be used in contempt proceedings." *United States v. Wilson,* 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186, 194–95 (1975), quoting *Anderson v. Dunn,* 19 U.S. (6 Wheat.) 204, 231, 5 L.Ed. 242 (1821). Cf. *In re Martorano,* 464 Pa. 66, 346 A.2d 22 (1975).

■ It is our considered judgment that the use of the summary contempt power was not necessary in this case. Appellant's remark was an isolated one, and neither the rest of appellant's summation nor the record as a whole manifests additional insults to the trial judge. With the close of his address to the jury, appellant's active participation in the trial was nearly over; and while it is true, as the Commonwealth suggests, that appellant could have committed additional contumacious acts through statements or gestures during later stages of the trial, the record indicates that an announcement to the lawyer by the court that, in view of his remarks, a contempt citation would be forthcoming would have been a sufficient deterrent to such conduct. In addition, this situation seems clearly to have been one in which the court's charge could have countered the effect of appellant's remarks.[10] It is pertinent to note in addition that appellant's conduct did not disrupt, obstruct or improperly prolong the proceedings. While this factor does *not* affect the very different question of whether or not appellant's conduct was contumacious, it does have a bearing on wheth-

an opportunity was not afforded in the present case. On the question of whether a summary contempt punishment must, as a matter of due process, be entered at the moment during the trial that the contempt occurs, see *Taylor v. Hayes, supra,* 418 U.S. at 497–98, 94 S.Ct. 582, 41 L.Ed.2d at 907, and cases cited therein.

**10.** Such a charge would emphasize that the court's summary of the evidence was not presented in order to favor one side or another; that in mentioning or failing to mention any particular segment of evidence, the court had no intention of placing any emphasis or lack thereof upon it; that the summary was presented solely with a view to assisting the jury in its deliberations; and that the jury's recollection of the evidence and its judgment regarding the weight and credibility of the evidence were governing.

er the contempt adjudication should have been summary in nature.[11]

"We do not mean to imprison the discretion of judges within rigid mechanical rules. The nature of the problem precludes it." *Offutt v. United States, supra*, 348 U.S. at 15, 75 S.Ct. at 14, 99 L.Ed. at 16. Much weight should be given to the trial court's judgment in assessing the necessities of a particular situation. And we do not hold that, like the dog which must be accorded one free bite, a lawyer must be accorded one contemptuous remark before a judge may consider a summary contempt adjudication.[12] Indeed, an attorney as an officer of the court should be held to a higher standard of courtroom conduct than a layman. See N. Dorsen & L. Friedman, Disorder in the Court: Report of the Association of the Bar of the City of New York, Special Committee on Courtroom Conduct 149–52, 157–59 (1973). We hold only that where, as here, the record does not show a necessity for the imposition of summary punishment, the employment of such a procedure must be held an abuse of discretion.[13]

**11.** When the situation is otherwise, the propriety of the use of the summary contempt power is indisputable. E. g., *United States v. Wilson, supra; Sacher v. United States, supra; Commonwealth v. Strickler*, 481 Pa. 579, 393 A.2d 313 (1978); *Commonwealth v. Africa*, 466 Pa. 603, 619–22, 353 A.2d 855 (1976) (plurality opinion); *Commonwealth v. Patterson, supra; Pennsylvania v. Local 542, International Union of Operating Engrs.*, 552 F.2d 498 (3d Cir. 1977); *United States v. Proffitt*, 498 F.2d 1124 (3d Cir.), *cert. denied*, 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974).

**12.** In most instances a warning should be administered to the offending lawyer upon the utterance of the first contemptuous remarks and a summary proceeding should be used as a last resort after the admonitions of the court have been disregarded, but circumstances may arise where even a single remark may require the imposition of a summary sanction.

**13.** See generally Supreme Court of New York, Appellate Division, First and Second Departments, Special Rules Concerning Courtroom Decorum § 609.2 (1971), *reprinted in* N. Dorsen & L. Friedman, *supra*, at 352:

"(a) *Exercise of the Summary Contempt Power*

(1) The power of the court to punish summarily contempt committed in its immediate view and presence shall be exercised only in exceptional and necessitous circumstances, as follows:

■■■ Since this case must go back to the lower court we think it appropriate to address one final matter. From the same necessity that in a proper case warrants summary punishment for contempt comes also the permissibility of the imposition of sanctions by the judge who heard and saw the misconduct. But when that necessity is absent, the reason for allowing the judge who has been the object of insult to preside over the hearing is also absent. As a constitutional matter, recusal is required when the record reveals a "running, bitter controversy" between the judge and the offender. *Mayberry v. Pennsylvania*, 400 U.S. 455, 465, 91 S.Ct. 499, 27 L.Ed.2d 532, 540 (1971). See also *Taylor v. Hayes, supra* note 9, 418 U.S. at 501–03, 94 S.Ct. 2697, 41 L.Ed.2d at

(i) Where the offending conduct either

(A) disrupts or threatens to disrupt proceedings actually in progress; or

(B) destroys or undermines or tends seriously to destroy or undermine the dignity and authority of the court in a manner and to the extent that it appears unlikely that the court will be able to continue to conduct its normal business in an appropriate way; and

(ii) The court reasonably believes that a prompt summary adjudication of contempt may aid in maintaining or restoring and maintaining proper order and decorum.

(2) Wherever practical punishment should be determined and imposed at the time of the adjudication of contempt. However, where the court deems it advisable the determination and imposition of punishment may be deferred following a prompt summary adjudication of contempt which satisfies the necessity for immediate judicial corrective or disciplinary action.

(3) Before summary adjudication of contempt the accused shall be given a reasonable opportunity to make a statement in his defense or in extenuation of his conduct.

\*     \*     \*     \*     \*     \*

"(c) *Judicial Warning of Possible Contempts*

Except in the case of the most flagrant and offensive misbehavior which in the court's discretion requires an immediate adjudication of contempt to preserve order and decorum, the court should warn and admonish the person engaged in alleged contumacious conduct that his conduct is deemed contumacious and give the person an opportunity to desist before adjudicating him in contempt. Where a person so warned desists from further offensive conduct, there is ordinarily no occasion for an adjudication of contempt. Where a person is summarily adjudicated in contempt and punishment deferred and such person desists from further offensive conduct, the court should consider carefully whether there is any need for punishment for the adjudicated contempt."

909–10. Compare *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). The presence or absence of judicial bias is irrelevant, as shown by *Snyder's Case*, 301 Pa. 276, 289–90, 152 A. 33 (1936), in which we required recusal where personal interest was evident although bias was not. See also *Johnson v. Mississippi*, 403 U.S. 212, 215, 91 S.Ct. 1778, 29 L.Ed.2d 423, 427 (1971). In the case at bar there is no indication of a "running, bitter controversy",[14] and no personal interest on the part of the judge is evident. Nonetheless, the fact that the conduct here was on its face a personal insult to the trial judge requires, since "justice must satisfy the appearance of justice," *Offutt v. United States, supra*, 348 U.S. at 14, 75 S.Ct. at 13, 99 L.Ed. at 16, that the nonsummary trial of this case be held by another judge, as was done, *e. g.*, in *In re Johnson, supra*, 467 Pa. at 554–55, 359 A.2d 739. In this way evidence, to the extent relevant, of appellant's demeanor and intent may be presented on the record to, and not recalled by, the fact-finder, and any appearance of unfairness will be avoided.[15]

Judgment of sentence reversed and case remanded for further proceedings consistent with this opinion.

LARSEN, J., joins in this opinion and files a concurring opinion.

14. Appellant himself characterizes the proceedings prior to the summation as "hassle free." Brief for Appellant at 6.

15. See generally, Special Rules Concerning Courtroom Decorum, *supra* note 13, § 609.2(d):

"(d) *Disqualification of Judge*

The judge before whom the alleged contumacious conduct occurred is disqualified from presiding at the plenary hearing or trial (as distinguished from summary action) except with the defendant's consent:

(1) If the allegedly contumacious conduct consists primarily of personal disrespect to or vituperative criticism of the judge; or

(2) If the judge's recollection of, or testimony concerning the conduct allegedly constituting contempt is necessary for an adjudication; or

(3) If the judge concludes that in view of his recollection of the events he would be unable to make his decision solely on the basis of the evidence at the hearing."

O'BRIEN, J., concurs in the result.

MANDERINO, J., filed a dissenting opinion in which ROBERTS, J., joins.

NIX, J., dissents, believing that the comments did not amount to contumacious conduct.

LARSEN, Justice, concurring.

I join in Mr. Justice Pomeroy's opinion. However, I would like to take issue with Judge James T. McDermott's statement to the jury, "I am the law. I am the law. There is no other law save me." This is a rather pompous statement for a mortal. No human being *is* the law. Human beings can only serve the law; that is, serve the cause of justice.

MANDERINO, Justice, dissenting.

I dissent from Mr. Justice Pomeroy's plurality opinion which refuses to follow our recent decision in *In re Johnson*, 467 Pa. 552, 359 A.2d 739 (1976), a case in which a majority of this Court concluded that the allegedly contemptuous conduct of an attorney practicing before the Court could be punished only by an exercise of the contempt power granted to the court by Subsection III of the Act of June 16, 1836. (17 P.S. § 2041 (1962)). In *Johnson*, we said that each of the Act's three subdivisions was intended to permit punishment of a different type of contemptuous conduct:

"Subsection I permits the courts of the Commonwealth to compel their officers properly to perform their ministerial duties. For example, sheriffs must serve process, court reporters must record and transcribe testimony and prothonotaries must receive, date and file documents. Misconduct of any of these prescribed duties, which are imposed upon the individual by virtue of the official position held, is made punishable by subsection I. There need be no formal order directing the individual to do an act nor does the misconduct have to be within the presence of the court. Subsection I authorizes the court to punish the misconduct of any of the day to day functions necessary to the administration of justice.

Subsection II permits a court to punish 'disobedience or neglect' of its 'lawful process.' Parties must obey decrees and orders, witnesses must appear when subpoenaed, jurors must present themselves when called. There must be a formal order directed to a specific person or group of persons, but the refusal to comply need not occur in the court's presence. Subsection II permits the courts to compel compliance with formal orders necessary or resulting from the trial of lawsuits.

Finally, subsection III grants the court power to ensure that lawsuits will be heard in a manner conducive to the just and orderly resolution of the issues presented. Any conduct 'in the presence of the court' which 'obstructs the administration of justice' may be punished under this grant of power. The third subdivision requires no formal order, but rather incorporates an implicit standard of decorum within the presence of the court. *The conduct involved in this case could only be punished by exercise of the contempt power granted under subsection III . . .*" (Emphasis added.)

*Id.*, 467 Pa. at 556–557, 359 A.2d at 741–742.

A conviction under section three ". . . requires a finding of conduct that amounts to misbehavior in the presence of the court and a further finding that the misbehavior obstructed the administration of justice." *Tenenbaum v. Caplan,* 454 Pa. 1, 4, 309 A.2d 428, 430 (1973). Even if we accept the prosecution's contention that the remarks for which appellant was held in contempt constitute "misbehavior," the judgment must be reversed because the evidence fails to establish beyond a reasonable doubt that this assumed misbehavior obstructed the administration of justice, a necessary element for conviction. *Matter of Johnson, supra, Tenenbaum v. Caplan, supra.* In fact, in this case, there was clearly no obstruction of the administration of justice.

We recently stated in *Matter of Johnson, supra,*
"Cases finding an obstruction of the administration of justice, as evidenced by the affirmance of a conviction for

contempt of court under subsection III, give some idea what is meant by the phrase. *See, e. g., Commonwealth v. Patterson,* 452 Pa. 457, 308 A.2d 90 (1973) (fighting with deputy sheriffs in courtroom after they stopped an unlawful attempt by criminal defendants to leave); *Commonwealth v. Snyder,* 443 Pa. 433, 275 A.2d 312 (1971) (defendant interrupted Commonwealth's closing argument, refused to agree to behave in an orderly manner); *Mayberry Appeal,* 434 Pa. 478, 255 A.2d 131 (1969), vacated on other grounds, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) (defendant interrupted proceedings, called trial judge a 'hatchet man for the State,' 'a dirty S.O.B.,' and a 'dirty tyranical old dog')."

467 Pa. at 558, 359 A.2d at 742.

Criminal contempt was defined in *Tenenbaum v. Caplan,* 454 Pa. 1, 4, 309 A.2d 428, 430 (1973):

" 'The statute [subsection III] requires that there be an obstruction of the administration of justice which is not present in this case. There was no interruption of the trial. There was no disruption of the proceedings. Under such circumstances, we cannot find that appellant's conduct obstructed the administration of justice.' "

467 Pa. at 558, 359 A.2d at 742.

As indicated by these cases, the complained of conduct must interfere with and disrupt the orderly process of a court before it will be deemed to be an obstruction of the administration of justice.

Our narrow definition of the phrase "obstruction of the administration of justice" is in accord with that unanimously accepted by the members of the Supreme Court of the United States. *See, In the Matter of Larry Little,* 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972). Indeed, affirming appellant's contempt conviction in the absence of proof beyond a reasonable doubt that his acts constituted obstruction of the administration of justice, contravenes the holdings of the United States Supreme Court regarding what can constitutionally constitute the crime of contempt of court in the state system. *In the Matter of Larry Little,*

*supra; Holt v. Virginia,* 381 U.S. 131, 85 S.Ct. 1375, 14 L.Ed. 290 (1965).

An examination of the United States Supreme Court's decision in *In the Matter of Larry Little,* supra, is highly instructive. In that case Larry Little was defending himself on a charge of carrying a concealed weapon. In his summation to the jury, Little ". . . made statements that the court was biased and had prejudged the case and that petitioner was a political prisoner." *Id.* 404 U.S. at 554, 92 S.Ct. at 660, 30 L.Ed.2d at 710. A North Carolina state trial court held Little in contempt, concluding that his remarks ". . . were very disrespectful and tended to subvert and prevent justice." *Id.* at 554, 92 S.Ct. at 660, 30 L.Ed.2d at 710. The North Carolina state court also concluded that Little's statement ". . . directly tended to interrupt its proceedings and to impair the respect due the [courts] authority," and further ". . . that they reflected on the integrity of the court and tended to subvert and prevent justice," and that Little's remarks "were wilfull and intentionally used and that the words tended to interrupt and to impair the respect due its authority." *Id.* at 554, 92 S.Ct. at 660, 30 L.Ed.2d at 710. The United States Supreme Court reversed Little's conviction holding that the above quoted remarks did not constitute criminal contempt. The Supreme Court pointed out that there was no evidence that the defendant "actually disrupted the court proceeding," and said that to constitute contempt, the conduct "must constitute an imminent, not merely a likely, threat to the administration of justice." *Id.* at 555, 92 S.Ct. at 660, 30 L.Ed.2d at 710.

The Supreme Court concluded saying:

". . . [T]he law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion. Judges are supposed to be [persons] of fortitude, able to thrive in a hearty climate. Trial courts . . . must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *Id.* at 555, 92 S.Ct. at 660, 30 L.Ed.2d at 711 (Citations omitted.)

Involving as it did the reversal of a contempt conviction in a state court, *Little* is binding on us. State courts are not free to conclude that conduct such as that for which appellant was held in contempt constitutes contempt of court unless it actually disrupts the court proceeding. *See also Holt v. Virginia, supra.*

In this case the evidence fails to establish any disruption of court proceedings, therefore, appellant's conduct cannot be said to have obstructed the administration of justice, as required by the Act before one may be found guilty of contempt of court.

The order should be reversed and appellant should be ordered discharged.

ROBERTS, J., joins in this dissenting opinion.