418 A.2d 688

**COMMONWEALTH of Pennsylvania**

v.

**Edward Eugene LOHR, Appellant.**

Superior Court of Pennsylvania.

Argued April 11, 1979.

Filed Feb. 22, 1980.

Charles F. Haley, Butler, for appellant.

Robert F. Hawk, Assistant District Attorney, Butler, for Commonwealth, appellee.

Before PRICE, HESTER and MONTGOMERY, JJ.

PRICE, Judge:

Following a jury trial commenced on June 21, 1978, appellant was convicted of attempted murder[1] and statutory rape.[2] Post–trial motions for a new trial and in arrest of judgment were denied, and appellant was sentenced to a term of imprisonment of from five to ten years on each of the two counts of which he was convicted, and he was ordered to pay the costs of prosecution. On appeal, appellant contends that his right to a speedy trial under Pa.R. Crim.P. 1100 was violated and that he was denied a fair trial due to alleged prejudicial pretrial publicity. Finding no merit to either of these contentions, we affirm the judgment of sentence.

The pertinent facts are as follows. On Halloween night, 1977, the complainant, a thirteen year old female, was hitchhiking on McKnight Road, Ross Township, with another female companion. The duo accepted a ride offered by appellant and three male companions. The complainant was eventually taken to a cottage in Jackson Township and was there raped and coerced into engaging in deviate sexual intercourse. She was then taken into a wooded area by appellant and co–defendant Chester Fulton where she was stabbed a number of times with an ice pick and hit over the head with a hatchet. The young girl was subsequently abandoned; the principals were working under the assump-

1. 18 Pa.C.S. § 2502.

2. 18 Pa.C.S. § 3122.

tion that she was dead. She managed to get herself to aid and was eventually able to testify at trial.

The written complaint on the rape charge was filed on November 1, 1977. Trial was initially scheduled for March 20, 1978, but when the trial court learned that an attempted murder charge was filed against appellant arising out of the same criminal episode, the court continued the case so that both charges could be tried at the same time.[3] The complaint charging appellant with attempted murder was not filed until February 24, 1978. As reason for the delay, the Commonwealth explained that until that time, it was operating under the misconception that co–defendant Fulton and co–defendant Robert Harris were responsible for the stabbings. It was only after the preliminary hearing of co–defendant Harris,[4] when the complainant identified appellant, not Harris, as her other attacker, that the Commonwealth had sufficient information[5] to file an attempted murder complaint against appellant.

On April 21, 1978, the Commonwealth filed a petition entitled "APPLICATION FOR CONTINUANCE[6] OF 180

3. The court, in essence, was complying with Pa.R.Crim.P. 131 which requires that offenses alleged to have been committed by one person and which arise from the same incident be docketed together, and also with *Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432, *vacated* 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973) *reinstated on remand,* 455 Pa. 622, 314 A.2d 854, *cert. denied,* 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974), which held that multiple offenses arising from the same criminal episode should be tried together to avoid double jeopardy consequences.

4. Subsequent to November 1, 1977, co–defendant Harris fled the jurisdiction and was eventually discovered in California. During this time, appellant professed that it was Harris, not he, who had participated in the stabbing.

5. The complainant notified the authorities at appellant's preliminary hearing in December 1977, that he was one of her two attackers with respect to the murder attempt. It was not until co–defendant Harris' preliminary hearing, however, that the complainant had an opportunity to confront both suspects and make a positive identification.

6. Although mistakenly labelled as a petition for continuance, appellant (*see* April 24, 1978 N.T. 6) and the court treated it as a petition for extension.

DAYS", in which it asserted that despite its due diligence it would be unable to try appellant on both the rape and the attempted murder charges within 180 days of the filing of the first complaint against him. The reason given for this inability to try appellant timely was the confusion over the identity of the participants in the murder attempt. A hearing was held on April 24, 1978, and per order of the Honorable John C. Dillon, the run time under Rule 1100 was extended to the first week of the criminal trial term which was to begin on June 19, 1978. Trial commenced on June 21, 1978, the 231st day following the filing of the initial complaint against appellant.

Under the precept of Rule 1100, the Commonwealth had 180 days following the filing of the criminal complaint, or until May 1, 1978, within which to try appellant, barring any periods of excludable time under section (d)[7] or any extensions of the run date granted pursuant to section (c)[8] of the Rule. In the instant case, the Commonwealth did obtain a timely extension, and trial commenced within the extended run time.

Appellant contends, however, that the Commonwealth failed to establish its due diligence at the Rule 1100 hearing, and therefore, the trial court was in error in granting an extension. We disagree.

7. Section (d) of the Rule provides that:
"In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:
(1) the unavailability of the defendant or his attorney;
(2) any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded."

8. Section (c) of the Rule provides that:
"At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such application shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced."

■ The fact situation in the instant case involves the interplay of a number of considerations, to—wit, the necessity of trying appellant within the mandate of Rule 1100, coupled with the necessity of the Commonwealth to make a showing of due diligence, and the necessity of trying both offenses together to avoid double jeopardy consequences, *see* 18 Pa.C.S. § 110. We note, initially, that to justify the trial court's grant of a petition for extension, the Commonwealth must make a record showing of due diligence. Mere assertions of due diligence and unproven facts will not suffice. *Commonwealth v. Ehredt*, 485 Pa. 191, 401 A.2d 358 (1979). In the instant case, a hearing was held in which the Commonwealth asserted that, with respect to the attempted murder charge, it was unable to file a complaint against appellant until co—defendant Harris, who had previously been thought to be a participant rather than appellant, had returned to the jurisdiction and been absolved of responsibility by the complainant. Once this was accomplished, the Commonwealth acted with dispatch in filing a complaint against appellant and preparing its case. However, due to the proximity of the preliminary hearing on the attempted murder charge to the run date on the statutory rape charge, the Commonwealth would have been unable to try both cases together. In the case of *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432, *vacated*, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), *reinstated on remand*, 455 Pa. 622, 314 A.2d 854, *cert. denied*, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974), our supreme court held that all charges arising from the same criminal episode must be tried in a single trial, if all offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial. *See also Commonwealth v. Washington*, 481 Pa. 474, 393 A.2d 3 (1978). Thus, if the Commonwealth was unable to try both the statutory rape charge and the attempted murder charge together, it would have been precluded from trying the second offense at a subsequent trial. We now hold that *Campana* considerations *may* provide the basis for the granting of a petition for extension provided that the Commonwealth makes a record showing of due diligence.

The petition shall be denied, however, if the record reflects any impropriety by the Commonwealth to circumvent Rule 1100.[9]

■ The record in the instant case sufficiently establishes that the Commonwealth acted with due diligence in bringing appellant to trial. Once the Commonwealth acquired sufficient information to file an attempted murder complaint against appellant, it proceeded with dispatch. In addition, the record does not reflect any impropriety by the Commonwealth to circumvent Rule 1100. Under these circumstances, we find that the trial court did not err in granting the Commonwealth's petition to extend and that appellant was tried within mandate of Rule 1100.

Appellant next asserts that he was denied a fair and impartial trial as a result of prejudicial pretrial publicity. We disagree.

■ Our supreme court has made it clear that an application for a change of venue is addressed to the sound discretion of the trial court, and its exercise of discretion will not be disturbed by an appellate court in the absence of an abuse of discretion. *Commonwealth v. Casper*, 481 Pa. 143, 392 A.2d 287 (1978); *Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976); *Commonwealth v. Hoss*, 469 Pa. 195, 364 A.2d 1335 (1976); *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976). The important inquiry, of course, is whether any juror has formed a fixed opinion of appellant's guilt or innocence as a result of the pretrial publicity. *See Commonwealth v. Casper, supra; Commonwealth v. Kichline, supra.* Normally, one who claims that he has been denied a fair trial because of prejudicial pretrial publicity must show *actual* prejudice in the empaneling of the jury. *See Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Commonwealth v. Casper, supra; Commonwealth v. Hoss, supra; Commonwealth v. Pierce,*

9. In this respect we analogize to those Rule 1100 situations in which the Commonwealth files two complaints against the defendant, the first one having been dismissed. *See, e. g., Commonwealth v. Whitaker*, 467 Pa. 436, 359 A.2d 174 (1976).

451 Pa. 190, 303 A.2d 209, *cert. denied*, 414 U.S. 878, 94 S.Ct. 164, 38 L.Ed.2d 124 (1973). However, where the publicity is found to be "inherently prejudicial," *i. e.*, so sustained, pervasive, inflammatory and inculpatory, appellant will be relieved of the burden of showing a nexus between the publicity and actual jury prejudice. *Commonwealth v. Sutton*, 485 Pa. 47, 400 A.2d 1305 (1979); *Commonwealth v. Casper, supra; Commonwealth v. Frazier*, 471 Pa. 121, 369 A.2d 1224 (1977).

Of course, neither the mere existence of extensive pretrial publicity, nor the possibility that prospective jurors will have formed an opinion based on news accounts will suffice to establish a presumption of prejudice. In the case of *Irvin v. Dowd*, 366 U.S. 717, 722–23, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1961), the United States Supreme Court stated:

> "It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." (citations omitted).

*See also Commonwealth v. Sutton, supra; Commonwealth v. Casper, supra; Commonwealth v. Richardson*, 476 Pa. 571, 383 A.2d 510 (1978).

In cases in which prejudicial pretrial publicity is alleged, the trial court should consider: whether the pretrial publicity revealed the existence of the accused's prior criminal record; whether the publicity referred to confessions, admissions, or reenactments of the crime by the defendant;

and whether such information is the product of reports by the police and prosecutorial officers. *Commonwealth v. Sutton, supra; Commonwealth v. Casper, supra.* The presence of one of these elements does not, in itself, warrant a presumption of prejudice. Inquiry must be made to determine whether such publicity has been so extensive, sustained, and pervasive that the community must be deemed to have been saturated with it.[10]

In applying these principles to the instant case, we find that the trial court did not abuse its discretion in denying appellant's petition for change of venue. The trial court held hearings on co–defendant Fulton's petition for change of venue on May 17, 1978, and on appellant's petition on June 20, 1978. Numerous articles were introduced from the *Butler Eagle* (coverage of between 61.5–69% of total population in Butler County), the *Pittsburgh Press* and/or *Pittsburgh Post Gazette* (coverage of approximately 7.5%) and the audio portion of a broadcast from television station WIIC aired shortly after the principals were apprehended. The trial court found that the evidence presented merely indicated factual reporting of the events of the pretrial procedures and that frequently, appellant's name was omitted from the publications; additionally, there was no evidence of any adverse editorial commentary. The court concluded that the pretrial publicity was not inflammatory and that appellant would be able to obtain a trial before a fair and impartial jury. Our review of the record supports this finding. The pretrial publicity in the instant case was not so sustained, inflammatory and inculpatory as to establish a presumption of prejudice and relieve appellant of the burden of showing a nexus between the publicity and the actual prejudice. *See Commonwealth v. Sutton, supra;*

10. In determining whether the community has become saturated with prejudicial pretrial publicity, the trial court should consider the size and character of the area concerned, the pervasiveness of the media coverage in the community, and whether there has been a sufficient cooling off period between the publicity and commencement of trial that the prejudicial effect of the publicity may be deemed to have dissipated. *See Commonwealth v. Sutton, supra; Commonwealth v. Casper, supra.*

*Commonwealth v. Casper, supra; Commonwealth v. Frazier, supra.* Since appellant does not allege, nor is there present in the record, any evidence of actual prejudice in the empaneling of the jury, we conclude that the trial court did not abuse its discretion in denying appellant's petition for a change of venue.

Accordingly, the judgment of sentence is affirmed.