427 A.2d 1169

**COMMONWEALTH of Pennsylvania**

v.

**John KRASNER, Appellant.**

Superior Court of Pennsylvania.

Argued June 13, 1980.

Filed March 6, 1981.

Francis P. Burns, Pittston, for appellant.

Michael C. Kostelaba, Assistant District Attorney, Wilkes-Barre, for Commonwealth, appellee.

Before CERCONE, President Judge, and PRICE, SPAETH, HESTER, CAVANAUGH, BROSKY and WICKERSHAM, JJ.

PRICE, Judge:

Following a jury trial commenced on March 10, 1975, appellant was found guilty of solicitation to commit murder.[1] Post-verdict motions were denied and appellant was sentenced to a one to two year term of imprisonment. He now alleges numerous instances of error, none of which we find meritorious. We therefore affirm the judgment of sentence.[2]

Briefly summarized, the salient facts are these. On or about November 3, 1972, appellant, owner and operator of adult bookstores in eastern Pennsylvania and New Jersey, solicited one James Flood to murder appellant's competitor and former partner, Allen Morrow. Flood informed appellant that it would cost $20,000 to have Morrow eliminated, $10,000 to be paid in advance with the balance due following the murder. At a subsequent meeting between appellant, Flood, and Flood's girlfriend, Catherine Bobrowicz, appellant delivered $10,000 in cash in a brown paper bag and told Flood: "Here's my part of the bargain. You keep yours. Hit Morrow and hit him quick." On or about August 19, 1973, Flood contacted Morrow, informed him that appellant wanted him killed, and offered instead to murder appellant for a price. Flood, Morrow, and Morrow's son met the following day at which time Flood reiterated that appellant had hired him to kill Morrow and again offered to "hit" appellant. Unbeknownst to Flood, Morrow recorded the

1. Act of June 24, 1939, P.L. 872, § 1101, 18 P.S. § 5101 (Purdon 1963), *repealed* by the Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 107 (Purdon 1973). The offense appellant was charged with committing occurred prior to June 6, 1973, the effective date of the new Crimes Code. Pennsylvania's criminal solicitation statute is presently codified at 18 Pa.C.S. § 902 (Purdon 1973).

2. This appeal was originally argued before a three-judge panel of this court, but because of the importance of one of the questions raised and a potential conflict among our cases, reargument before the court en banc was directed.

conversation with a cassette tape recorder concealed upon his person. Shortly thereafter, Morrow contacted the Pennsylvania State Police, informed them of Flood's information and offer, and produced the tape of the August 20, 1973 meeting. Morrow agreed to cooperate with the police and Flood was ultimately arrested on August 26, 1973 as he received a purported payment from Morrow. During interrogation, Flood informed the police that appellant had hired him to kill Morrow and recounted the events of November, 1972. Further investigation corroborated Flood's narrative, and appellant was arrested on October 2, 1973 and charged with solicitation to commit murder.

Appellant's first and principal contention on appeal is that the trial court erred in denying his timely motion to dismiss the charge against him pursuant to Pa.R.Crim.P. 1100(a)(1).[3] We conclude that appellant's unqualified waiver of his right to a prompt trial, which waiver he executed during a lengthy colloquy conducted by the trial court in the presence and with the consent of both of his attorneys, renders his contention meritless.

The facts pertinent to our disposition of appellant's Rule 1100 claim are as follows. Following his arrest, a criminal complaint was filed against appellant on October 9, 1973. The Commonwealth thus had 270 days, or until July 6, 1974, to bring appellant to trial. Appellant's trial was originally scheduled to begin on May 30, 1974. At a pretrial hearing on that date appellant's motion for a continuance was denied. Trial was nonetheless postponed until June 3, 1974, because the trial judge was unavailable. On the morning of June 3, appellant filed an Application for Writ of Prohibition with this court to direct the trial court to grant the the requested continuance. On June 11, 1974, after argument, we decline to issue the writ. On June 12, 1974, following appellant's appearance before the trial court on an unrelated

3. Pa.R.Crim.P. 1100(a)(1) provides that "[t]rial in a court case in which a written complaint is filed against the defendant after June 30, 1973 but before July 1, 1974, shall commence no later than two hundred seventy (270) days from the date on which the complaint is filed."

matter, the district attorney asked that the instant case be called to trial. Appellant's counsel thereupon requested a continuance, and the following colloquy took place:

THE COURT: All right, what is your position about the two-seventy-day rule, are you satisfied to waive that?

MR. MIELE [Appellant's Counsel]: Yes, your Honor.

THE COURT: Mr. Levy?

MR. LEVY [Appellant's Counsel]: No problem.

THE COURT: Mr. Krasner?

MR. KRASNER: Yes, sir.

THE COURT: Would you swear Mr. Krasner, please?

*JOHN KRASNER: being duly sworn, testified as hereinafter appears.*

THE COURT: Mr. Krasner, I presume you know what has transpired because you were in the court room, but so there would not be any misunderstanding the Court specifically directs or instructs you now that Mr. Toole, having been informed by the Superior Court of this Commonwealth that your request for writ of prohibition is denied, he requested the Court to start your trial today, immediately, now.

In accordance with the Rules of Criminal Procedure and the holdings of the United States Supreme Court and the Supreme Court of this Commonwealth, *you are entitled to go to trial within no later than two hundred and seventy days from the date in which the written complaint was filed,* which Mr. Muroski just stated was November 8, 1973.[4]

*Both your lawyers, as you know, have asked the Court to continue this case until sometime in the future. If the Court does grant the request that has been made by your counsel in this case, more than two hundred seventy days will have transpired prior to the date fixed for your trial.*

The Court will not grant a continuance under any circumstances if you don't agree to waive *any* rights that you have to a speedy trial under both the United States

4. The record and the parties agree that the criminal complaint was filed on October 9, 1973.

and Pennsylvania constitutions and under the Rule 1100 of the Pennsylvania Rules of Criminal Procedure. *Do you understand what I am talking about?*

MR. KRASNER: *Yes, I do, your Honor.*

THE COURT: Do you have any questions you want to ask me about it?

MR. KRASNER: May I just make a statement?

THE COURT: Yes.

MR. KRASNER: It pertains to this.

THE COURT: Very well.

MR. KRASNER: I want to go to trial. No one wants to go to trial right now any faster than me, I've had it. All right?

Now, all we asked that day in Judge Brominski's office, your Honor, I was incarcerated, I had no way—this isn't a cop out, I want this trial, I've had it and I'm tired of being accused of looking for continuances. And all I have asked in this exculpatory thing is, if you're interested in justice, why are you so adamant in denying us what you have.

I would like a trial, I would like trial date set, your Honor, so I can have witnesses here. I have to ask witnesses to take off from work to be here. There are some witnesses that are incarcerated in the Luzerne County Jail that I would like to have here and I want to make sure that I have my witnesses.

The trial, I would like to start immediately if I was prepared for it. If you can set a date for it, I would be perfectly happy.

*I do waive that two hundred and seventy day requirement.*

THE COURT: *Because it is possible that your case may not be scheduled within that two hundred seventy day period.*

MR. KRASNER: *That I waive, your Honor.*

THE COURT: *The Court doesn't want any misunderstanding now.* You are represented by competent counsel who understand, I'm positive they understand, but *I don't want any misunderstanding with you in connection with*

*this.* And may I ask you this, sir; *do I take it that you now join with your lawyers in requesting this continuance and that you specifically waive your right, as I said, to a speedy trial and your rights under Rule 1100 which is the two-hundred-seventy-day rule?*

MR. KRASNER: *That I do, your Honor.*

THE COURT: All right, I'll grant the continuance and a trial date will be set and when the trial date is set you will be notified, or your counsel will be notified.

(N.T. 12–14, June 12, 1974) (emphasis added). Appellant now challenges the validity of his waiver, claiming that it was involuntary because the court below refused to grant the continuance unless he waived his Rule 1100 rights. Alternatively, he argues that even if the waiver was voluntary, it was of limited duration and thus not effective as a relinquishment of his Rule 1100 rights *in toto.* We disagree with both contentions.

In *Commonwealth v. Myrick,* 468 Pa. 155, 360 A.2d 598 (1976), our supreme court analogized the requirements for a valid waiver of an accused's right to a prompt trial to the formal requirements (*e. g.,* an on-the-record colloquy or a detailed written waiver signed by the accused and counsel) for a valid waiver of other important rights. The court observed that

[a]ll of these formal requirements for a waiver are intended to assure one thing—that the decision to waive these rights is the informed and voluntary act of the defendant and can be shown to be such by reference to the record. So long as there is an indication, on the record, that the waiver is the informed and voluntary decision of the defendant, it will be accorded prima facie validity. Absent this record indication of validity, the waiver will be ineffective. Moreover, these are merely formal indications of validity. In any waiver situation, the defendant may still attempt to prove that the waiver is invalid by showing that it was unknowing, unintelligent or involuntary.

*Id.,* 468 Pa. at 160–61, 360 A.2d at 600. The court refined its position in *Commonwealth v. Waldman,* 484 Pa. 217, 398 A.2d 1022 (1979), holding that although a formal on-the-record colloquy is not essential to the validity of a waiver of the protections of Rule 1100, the Commonwealth bears the burden of establishing that an accused's waiver of the right to a prompt trial was knowing, intelligent and voluntary.

▮ Instantly, the detailed colloquy conducted by the trial court was more than sufficient to establish, prima facie, that appellant's waiver was informed and voluntary. *Commonwealth v. Evans,* 489 Pa. 85, 413 A.2d 1025 (1980); *Commonwealth v. Myrick,* 468 Pa. 155, 360 A.2d 598; *Commonwealth v. Thompson,* 262 Pa.Super. 211, 396 A.2d 720 (1978); *Commonwealth v. Wareham,* 256 Pa.Super. 23, 389 A.2d 581 (1978). Furthermore, we are not persuaded that in these circumstances appellant's waiver was rendered involuntary merely because the trial court conditioned its granting of the requested continuance upon a waiver of Rule 1100. We have previously held that when an accused requests a continuance near the end of the Rule 1100 period, a court may condition its approval on the accused's agreement to a trial date beyond the period. *See Commonwealth v. Shields,* 247 Pa.Super. 74, 371 A.2d 1333 (1977), *affirmed,* 483 Pa. 524, 397 A.2d 790 (1979); *Commonwealth v. Hickson,* 235 Pa.Super. 496, 344 A.2d 617 (1975). Moreover, the record reveals that both of appellant's attorneys knew as of May 7, 1974, that trial would begin on May 30, 1974. When trial could not begin on that date because of the unavailability of the trial judge, the case was postponed several days until June 3, 1974, with the consent of counsel. At that point, appellant obtained a *de facto* continuance of nine days by petitioning for a Writ of Prohibition. Appellant and his counsel thus received notice of a fixed trial date over one month *before* the trial court indicted that it was going to call the case to trial on June 12, 1974. Notwithstanding their receipt of that notice, they were allegedly unprepared to proceed on June 12. In such circumstances, we cannot agree with appellant that he would have been "forced" to trial on June 12 had he not waived his Rule 1100 rights.

■ The success of appellant's Rule 1100 claim, therefore, turns on our interpretation of the duration of his June 12, 1974 waiver. Appellant argues that notwithstanding his three successive unqualified statements waiving the 270 day rule, he intended the waiver to be of limited duration because he only desired a continuance of several days to subpoena his witnesses for trial. To support this claim, appellant refers us to the following remarks which he made during the waiver colloquy: "I want to go to trial. No one wants to go to trial right now any faster than me, I've had it. . . . I would like to start immediately if I was prepared for it. If you can set a date for it, I would be perfectly happy."

Viewing these remarks in context, we believe they were intended to persuade the trial court that appellant's request for a continuance was not dilatory in purpose and were not, therefore, contemplated as a limitation on the scope of the waiver. Regardless of the purpose ascribed to appellant's remarks, however, they were plainly insufficient to limit appellant's otherwise unrestricted waiver of Rule 1100. As the quoted portion of the waiver colloquy indicates, appellant unequivocally stated on three successive occasions that he waived the protection of the 270 day rule. None of these statements contained language confining the waiver solely to the period of the continuance or to any other time period. Similarly, appellant's other remarks during the waiver colloquy were devoid of language specifically restricting the operative duration of the waiver. Furthermore, the order of the trial court continuing the case provided: "Upon recommendation of both defense counsel & defendant, Case is Continued until a later date."[5] There is on this record no indication of a definite time restriction. Absent any evidence of such a limitation, we decline to read into the waiver a qualification not there and hold that plaintiff waived his

5. We note that on the date of the continuance in the instant case, June 12, 1974, the trial court did not have the benefit of our supreme court's directive in *Commonwealth v. Coleman*, 477 Pa. 400, 406, 383 A.2d 1268, 1271 (1978), requiring that all continuances be granted for a specified period.

Rule 1100 rights indefinitely. *Cf. Commonwealth v. Gardner*, 282 Pa.Super. 70, 422 A.2d 832 (1980) (defendant executed only a limited waiver of Rule 1100 when his counsel noted at bottom of waiver form, "Please relist for February 7, 1977").

We have previously upheld the validity of general waivers of Rule 1100 where the defendant gave unqualified responses to questions during the waiver colloquy, *Commonwealth v. Thompson*, 262 Pa.Super. 211, 396 A.2d 720, and where the defendant signed a waiver form that did not confine the duration of the waiver to any specific length of time, *Commonwealth v. Scott*, 272 Pa.Super. 236, 414 A.2d 1095 (1979); *Commonwealth v. Lee*, 254 Pa.Super. 495, 386 A.2d 59 (1978). In contrast, our supreme court recently concluded that an accused's purported waiver of his Rule 1100 rights *in toto* was invalid. In *Commonwealth v. Manley*, 491 Pa. 461, 421 A.2d 636 (1980), the defendant's first trial terminated in a mistrial when the trial judge became ill. When the Commonwealth failed to commence a new trial within the prescribed ninety day period, *see* Pa.R.Crim.P. 1100(e), the defendant duly filed an application to dismiss pursuant to section (f) of Rule 1100, which application was erroneously denied. One week after his motion to dismiss had been rejected, the defendant requested a continuance because his attorney was litigating a case in federal court. The trial court agreed to continue the case provided the defendant waived his Rule 1100 rights and, accordingly, he executed the following waiver:

I hereby certify, that on [December 9, 1974,] Honorable ALEX BONAVITACOLA orders case cont. to January 27, 1974 in [Room] 625. Def. atty. on trial in Fed. Court . . . I, the defendant waive the 270 day rule and as to speedy trial.

A majority of this court held that the defendant thereby executed an unqualified waiver of his right to a prompt trial and thus could not complain that the trial court erred in denying the application to dismiss. *Commonwealth v. Manley*, 252 Pa.Super. 77, 380 A.2d 1290 (1977). The supreme

court concluded, however, that the waiver was limited to the length of the continuance.

> On this record, we cannot conclude that the December 9 waiver evidences an *intelligent* decision by appellant to waive his Rule 1100 rights *in toto* . . . . [T]he statement signed by appellant contains no indication that he understood the nature and scope of the right which he was waiving. Although an on-the-record colloquy is not necessary, we do require proof that the defendant understood the consequences of his act.
>
> The circumstances surrounding the waiver here confirm that appellant did not intend a blanket waiver of his Rule 1100 rights. The 90–day period prescribed by Rule 1100(d) already had run prior to the date the waiver was executed. Just one week earlier, on December 2, appellant's most recent Rule 1100(f) application erroneously had been denied . . . . [I]t is "difficult to believe that a defendant with an appreciation of his bargaining position would knowingly waive his right to include the period *before* a requested continuance in his Rule 1100 computations."

*Commonwealth v. Manley*, 491 Pa. at 469, 421 A.2d at 640 (emphasis in original), *quoting Commonwealth v. Manley*, 252 Pa.Super. at 92, 380 A.2d at 1297 (Hoffman and Spaeth, JJ., dissenting).

The signed statement in *Manley* and the circumstances surrounding its execution provided much stronger support for finding a limited waiver than do the circumstances *sub judice*. *Manley* does not preclude general waivers of Rule 1100. Rather, *Manley* requires only that there be some indication in the record that the accused understood the nature and scope of the waiver. The recorded colloquy in the instant case more than satisfies that requirement. Having executed a valid and unqualified waiver of the protection of Rule 1100, appellant cannot now be heard to complain that he was not brought to trial within 270 days.

▮ Appellant next contends that the trial court erred in refusing to grant his motion for change of venue, thereby

denying him a fair trial because of "massive" prejudicial pretrial publicity. We disagree.

> [A]n application for a change of venue is addressed to the sound discretion of the trial court, and its exercise of discretion will not be disturbed by an appellate court in the absence of an abuse of discretion. *Commonwealth v. Casper,* 481 Pa. 143, 392 A.2d 287 (1978); *Commonwealth v. Scott,* 469 Pa. 258, 365 A.2d 140 (1976); *Commonwealth v. Hoss,* 469 Pa. 195, 364 A.2d 1335 (1976); *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976). The important inquiry, of course, is whether any juror has formed a fixed opinion of appellant's guilt or innocence as a result of the pretrial publicity. *See Commonwealth v. Casper, supra; Commonwealth v. Kichline, supra.* Normally, one who claims that he has been denied a fair trial because of prejudicial pretrial publicity must show actual prejudice in the empaneling of the jury. *See Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Commonwealth v. Casper, supra; Commonwealth v. Hoss, supra; Commonwealth v. Pierce,* 451 Pa. 190, 303 A.2d 209, *cert. denied,* 414 U.S. 878, 94 S.Ct. 164, 38 L.Ed.2d 124 (1973). However, where the publicity is found to be "inherently prejudicial," *i. e.,* so sustained, pervasive, inflammatory and inculpatory, appellant will be relieved of the burden of showing a nexus between the publicity and actual jury prejudice. *Commonwealth v. Sutton,* 485 Pa. 47, 400 A.2d 1305 (1979); *Commonwealth v. Casper, supra; Commonwealth v. Frazier,* 471 Pa. 121, 369 A.2d 1224 (1977).

*Commonwealth v. Lohr,* 275 Pa.Super. 212, 418 A.2d 688, 691–92 (1980). Nevertheless, neither the mere existence of pretrial publicity nor the possibility that potential jurors have formed an opinion based on news accounts will suffice to establish a presumption of prejudice.[6] *Commonwealth v. Casper,* 481 Pa. 143, 392 A.2d 287 (1978).

---

**6.** It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have

We instead look to more discrete factors, *viz.*, whether the pre-trial publicity was, on the one hand, factual and objective, or, on the other hand, consisted of sensational, inflammatory and "slanted articles demanding conviction," *United States v. Sawyers*, 423 F.2d 1335, 1343 (4th Cir. 1970); whether the pre-trial publicity revealed the existence of the accused's prior criminal record; whether it referred to confessions, admissions, or reenactments of the crime by the defendant; and whether such information is the product of reports by the police and prosecutorial officers. Should any of the above elements be found, the next step of the inquiry is to determine whether such publicity has been so extensive, so sustained and so pervasive that the community must be deemed to have been saturated with it.[7]

*Id.,* 481 Pa. at 152–53, 392 A.2d at 292 (footnotes omitted).

■■■■ Applying these principles in the instant case, we conclude that the trial court did not abuse its discretion in denying appellant's motion for change of venue. At a hearing on the motion held on October 2, 1974, plaintiff produced thirteen newspaper articles to demonstrate the level of prejudicial pretrial publicity to which he was exposed. Ten of the articles, published between May 30, 1974

formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.
*Irvin v. Dowd*, 366 U.S. 717, 722–23, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961) (citations omitted).

7. Factors warranting consideration in determining whether the community has become saturated with prejudicial pretrial publicity include: (1) the size and character of the area concerned: (2) the pervasiveness of the media coverage; and (3) whether there has been a sufficient cooling off period between the publicity and the commencement of trial so that the prejudicial effect of the publicity may be deemed to have dissipated. *Commonwealth v. Sutton*, 485 Pa. 47, 400 A.2d 1305 (1979); *Commonwealth v. Casper*, 481 Pa. 143, 392 A.2d 287 (1978).

and June 13, 1974, were simply narratives of the disposition of the various pretrial motions filed in the instant case and of the disposition of appellant's application for a Writ of Prohibition. Six of those ten stories briefly mentioned appellant's prior convictions for violations of obscenity laws. Of the remaining three stories, published between September 22, 1974 and September 29, 1974, two noted the past convictions. In our view, all thirteen articles were highly objective accounts of the preliminary proceedings in this case. It defies reason to posit that they were somehow sensational and inflammatory. Furthermore, any potential prejudice created by the mention of appellant's prior convictions was erased by the passage of time between publication of the stories and the commencement of trial. Ten of the stories were printed eight months before trial and the remaining three were published five months before the trial. This time span was sufficient to dissipate any prejudice engendered by the publicity. *See Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976);· *Commonwealth v. Nahodil,* 462 Pa. 301, 341 A.2d 91 (1975); *Commonwealth v. Dobrolenski,* 460 Pa. 630, 334 A.2d 268 (1975); *Commonwealth v. Hoss,* 445 Pa. 98, 283 A.2d 58 (1971).[8]

**8.** In an unrelated but analogous claim, appellant contends that he was denied a fair trial because the trial judge refused appellant's request that he recuse himself. Specifically, appellant maintains that because the trial judge had previously entertained and denied appellant's pretrial motions, including a Rule 1100(f) motion to dismiss, he could not rule impartially on a second Rule 1100(f) motion argued immediately prior to the commencement of trial on March 10, 1975. This argument is groundless. *See Commonwealth v. Green,* 464 Pa. 557, 347 A.2d 682 (1975); *Commonwealth v. Christman,* 432 Pa. 455, 247 A.2d 451 (1968); *Commonwealth v. Smith,* 274 Pa.Super. 280, 418 A.2d 406 (1980); *Commonwealth v. Lee,* 262 Pa.Super. 280, 396 A.2d 755 (1978). Appellant also asserts that the trial judge should have disqualified himself because the assistant district attorney who tried the instant case for the Commonwealth was an associate in the judge's law firm three years before appellant's trial. We disagree. The mere fact that a judge was formerly associated with an attorney who *three years later* appears before him is patently insufficient to require recusal. Appellant's allegation, without more, fails to support a charge of bias. *See Bumpus v. Uniroyal Tire Co.,* 385 F.Supp. 711 (E.D.Pa. 1974); *Marine Towing Co. v. Fairbanks, Morse & Co.,* 225 F.Supp. 467 (E.D.Pa. 1963). *See also* ABA Code of Judicial Conduct, Canon 3(C)(1)(b).

Appellant further contends that the trial court erred in denying his motion for mistrial based on the Commonwealth's failure to disclose certain allegedly exculpatory material concerning the credibility of two Commonwealth witnesses, James Flood and Catherine Bobrowicz. After the jury was selected and sworn, appellant's counsel made the following request:

At this time we would, prior to the testimony, ask that the Commonwealth produce the state police records and any tapes in the possession of the Commonwealth and summaries of any oral interviews of any witnesses prior to the commencement of the case in order to study and prepare.

(N.T. 90, March 10, 1975). The trial court properly denied the request as premature, *Commonwealth v. Grayson*, 466 Pa. 427, 353 A.2d 428 (1976); *Commonwealth v. Kontos*, 442 Pa. 343, 276 A.2d 830 (1971); *Commonwealth v. Youngkin*, 285 Pa.Super. 417, 427 A.2d 1356 (1981); *Appeal of Cowell*, 243 Pa.Super. 177, 364 A.2d 718 (1976), and informed appellant's counsel that the request for the information could be renewed as each witness was called.[9] *Commonwealth v. Hamm*, 474 Pa. 487, 378 A.2d 1219 (1977); *Commonwealth v. Morris*, 444 Pa. 364, 281 A.2d 851 (1971); *Commonwealth v. Robinson*, 229 Pa.Super. 131, 324 A.2d 441 (1974). The record indicates that appellant failed to renew his request for the material at any time after his initial request prior to the taking of testimony. Having thus neglected to make a timely request for the evidence at trial, appellant cannot now challenge the trial court's denial of his motion for

9. The record discloses that appellant's counsel made several requests for disclosure of this same material prior to trial. Those requests were refused in accordance with the then-applicable Pa.R.Crim.P. 310 pertaining to pretrial discovery. Rule 310 provided, in pertinent part, that "[i]n no event ... shall the court order pretrial discovery or inspection of written statements of witnesses in the possession of the Commonwealth." *See Commonwealth v. Youngkin*, 285 Pa.Super. 417, 427 A.2d 1356 (1981); *Commonwealth v. Robinson*, 229 Pa.Super. 131, 324 A.2d 441 (1974). These authorities make it apparent that appellant was not entitled to *pretrial* discovery or inspection of the requested material.

mistrial based, apparently, on the prosecution's failure to produce the evidence on its own initiative.

Appellant next argues that the court below erred in denying his motion for a mistrial after the prosecution had twice elicited testimony revealing that Commonwealth witness Catherine Bobrowicz had identified appellant from a photographic array shown to her by Pennsylvania State Trooper William Koscinski. During direct examination of Trooper Koscinski, the following exchange occurred:

Q. [District Attorney Muroski]: Did you do anything to determine [Mrs. Bobrowicz's] credibility?

A. [Trooper Koscinski]: By?

Q. Did you test her in any way?

A. Yes, sir. I had a group of pictures.

Q. And whose pictures were they?

A. They were men approximately the same age as [appellant] and I think I had about six or seven of those pictures that I had placed on the table. . . .

(N.T. 105, March 10, 1975). No objection was interposed at that time. Thereafter, during direct examination of Catherine Bobrowicz, the following took place:

Q. [District Attorney Muroski]: And when Trooper Koscinski took a statement from you, did he do anything with you to determine if you knew who [appellant] was?

A. [Mrs. Bobrowicz]: Showed me quite a few pictures. He put them all out on my counter and asked me to pick him out.

Q. And were you able to pick out a picture?

(N.T. 404, March 13, 1975). Appellant's counsel objected and, at side bar, moved for a mistrial on the ground that, in combination, the testimonial references to the photographic array were prejudicial to appellant as they allowed the jury to infer that he had a prior criminal record. The trial court denied the motion.

 Although it is well-settled that testimonial reference to a photograph may constitute reversible error if a jury could reasonably infer therefrom prior criminal activity on

the part of the accused, *Commonwealth v. Carlos*, 462 Pa. 262, 341 A.2d 71 (1975); *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972), it is equally well-established that not every reference to a photograph necessarily requires reversal. *Id.*

> [T]he controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference. . . .

*Id.*, 448 Pa. at 181, 292 A.2d at 375.

Instantly, the challenged testimony did not link appellant to any specific prior criminal activity. The photographs mentioned by the two witnesses were never displayed, marked, admitted or otherwise referred to at trial, nor were they characterized as "mug shots" or as "photographs from a police file." *See Commonwealth v. Smith*, 454 Pa. 515, 314 A.2d 224 (1973). "In other words, aside from the fact that a police detective displayed the photograph, there was nothing else linking it to the police. It is highly unlikely that a juror would conclude from this alone that [appellant] had engaged in prior criminal conduct." *Commonwealth v. Carlos*, 462 Pa. at 266, 341 A.2d at 73. In such circumstances, "there was nothing that should reasonably suggest to a jury that the photographs were obtained by police officials as a result of the defendant's prior criminal activity." *Commonwealth v. Allen*, 448 Pa. at 182, 292 A.2d at 376. *Cf. Commonwealth v. Rivera*, 470 Pa. 131, 367 A.2d 719 (1976) (reference to accused as "junkie" did not create reasonable inference of prior criminal activity); *Commonwealth v. Hodge*, 246 Pa.Super. 71, 369 A.2d 815 (1977) (no prejudice when police officer testified that he knew defendant by a certain nickname as a result of prior contacts). The court below properly denied appellant's motion for a mistrial.

Appellant also contends that the trial court erred in denying his six motions for a mistrial during cross-examination of prosecution witness James Flood. Specifically, appellant complains that a mistrial should have been granted because Flood's behavior on cross-examination was "openly deceptive, sarcastic and insulting to the defense counsel, sarcastic and insulting to the defendant;" and that Flood "used profanity in court; evaded questions; argued with defense counsel; refused to answer questions, made unresponsive and humorous responses and retorts . . . and . . . turned a serious court trial into a humorous side show . . . ." Brief for Appellant at 64.

A motion for a mistrial is addressed to the discretion of the trial court, and it is primarily within the trial judge's discretion to determine whether an accused was prejudiced by misconduct in the courtroom. *Commonwealth v. Gardner*, 490 Pa. 421, 416 A.2d 1007 (1980); *Commonwealth v. Werts*, 483 Pa. 222, 395 A.2d 1316 (1978); *Commonwealth v. Craig*, 471 Pa. 310, 370 A.2d 317 (1977). Defense counsel's cross-examination of Flood lasted more than a day and covered 175 pages of transcript. Without detailing each instance of alleged misconduct, our examination of those of Flood's responses that occasioned appellant's six requests for a mistrial satisfies us that the court below did not abuse its discretion in denying the motions. While it is true that Flood's replies were at times caustic and that he displayed a certain amount of disrespect for appellant's counsel, we agree with the trial court that none of the responses complained of prejudiced appellant. Indeed, it is arguable, particularly in view of defense counsel's exhaustive efforts to destroy Flood's credibility and to portray him as a con artist and buffoon, that Flood's cavalier attitude on the witness stand benefited appellant.[10]

10. We are not persuaded, moreover, that the trial court erred in refusing appellant's requests to hold Flood in contempt for giving unresponsive answers. While conduct in the presence of the court that obstructs the administration of justice is punishable by a contempt citation, *In re Johnson*, 467 Pa. 552, 359 A.2d 739 (1976); *Tenenbaum v. Caplan*, 454 Pa. 1, 309 A.2d 428 (1973), the conduct

Appellant next complains that the court below abused its discretion by preventing his counsel from presenting evidence to impeach James Flood. Specifically, he maintains that the trial court prevented defense witness Leonard Roberts from rebutting Flood's statement that he had never extorted money from Roberts. This allegation has no basis in fact.

On cross-examination Flood testified, somewhat indignantly, that he had never extorted money from Roberts. To rebut this statement the defense called Roberts and the following occurred on direct examination:

Q. [Defense Counsel]: In any event, during your association with Mr. Flood, did he ever threaten you in any way?

A. [Mr. Roberts]: Just once.

Q. What did he say to you?

A. Well, I was giving him $400.00 a week.

Q. What was the threat?

A. Well, he told me if I didn't, the first time it would be a broken leg, the second time it'd be a box.

Q. Were you concerned about that?

A. Yes, I was, very concerned about it.

(N.T. 568, March 14, 1975). Shortly thereafter, defense counsel asked Roberts to describe the manner in which the extortion money passed from Roberts to Flood. The Commonwealth's objection to the question was sustained, and appellant now claims the trial court thereby prevented his counsel from attacking Flood's denial of the extortion.

■ It is clear from the quoted portion of Robert's testimony that appellant's counsel was permitted, without objection, to elicit testimony directly contradicting Flood's statement that he never extorted money from Roberts. When

must interfere with and significantly disrupt judicial proceedings. A showing of actual, imminent prejudice to a fair proceeding or to the preservation of the court's authority is required, *Commonwealth v. Garrison*, 478 Pa. 356, 386 A.2d 971 (1978), and the danger of substantial disruption must not be merely perceived or even probable but rather must immediately imperil the proceedings, *In re Little*, 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972). Flood's behavior on the stand falls considerably short of meeting this standard.

counsel went beyond mere impeachment and attempted to develop extraneous and wholly collateral details of the extortion scheme, the trial court properly sustained the prosecution's objection.

 Appellant finally contends that the assistant district attorney exceeded the scope of permissible argument when, in his closing address, he allegedly remarked that appellant was a wealthy man capable of spending large sums of money to defend himself.[11] The prosecutor's closing argument was not recorded but the following pertinent colloquy was placed on the record:

MR. NEFF [Defense Counsel]: Objection.

THE COURT: Overruled.

MR. NEFF: May we see you at side bar?

THE COURT: Yes.

. . . .

MR. BURNS [Defense Counsel]: Your Honor, I think counsel is going too far at this point with his relationship of what the defense had available to them, the money they were expending, what they were providing and making the inference that [appellant] is a wealthy man and to spend extreme amounts of money and that he had it available to prove himself not guilty. We move for a mistrial.

THE COURT: Motion Denied.

(N.T. 635, March 17, 1975).

When the prosecution's closing argument is not recorded, it is well-settled that

[i]n order to avail himself of the right to object to improper remarks or a misstatement of fact or an unfair comment, counsel must object and move for the withdrawal of

11. Appellant also alleges that the prosecutor committed reversible error when, in his summation, he purportedly informed the jury that members of appellant's family were not strangers to the courtroom because they had been in courtrooms all across the Commonwealth. Appellant failed to raise this objection in his written post-trial motions, however, and is, therefore, precluded from raising it for the first time on appeal. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975).

a juror,[12] whereupon, the court should direct the stenographer to place upon the record the court's understanding of the remarks so that error may properly be assigned if the motion to withdraw the juror is denied.... *if the court refuses to direct the stenographer to place upon the record remarks to which objection has been made, the opposing counsel may place the remarks on the record by affidavit.*

*Commonwealth v. King,* 227 Pa.Super. 168, 172, 323 A.2d 260, 262 (1974) (citations omitted) (emphasis added). *See also Commonwealth v. Perkins,* 473 Pa. 116, 133 n. 10, 373 A.2d 1076, 1084 n. 10 (1977); *Commonwealth v. Melnyczenko,* 234 Pa.Super. 317, 325, 342 A.2d 430, 433 (1975) (Jacobs, J., concurring). Instantly, although appellant's counsel interposed a timely objection to the prosecutor's comment and moved for a mistrial, the trial court did not place its understanding of the challenged comments on the record. It was thus incumbent upon appellant to place the allegedly improper remarks on the record by affidavit. Having failed to take the measures necessary to insure adequate preservation of the remarks, appellant cannot challenge their propriety on appeal. *See Commonwealth v. Allen,* 443 Pa. 15, 276 A.2d 539 (1971); *Commonwealth v. Howard,* 212 Pa.Super. 100, 239 A.2d 829 (1968).[13]

Accordingly, judgment of sentence is affirmed.

SPAETH, J., files a dissenting opinion in which CERCONE, President Judge, joins.

12. Motions to withdraw jurors have been abolished and replaced by motions for a mistrial. *See* Pa.R.Crim.P. 1118.

13. Appellant cites three additional instances of error, all of which are devoid of merit and thus unworthy of extensive discussion. He first maintains that the trial court exhibited a decidedly hostile attitude toward defense attorney Neff, thereby depriving appellant of a fair trial. This contention is premised upon a single incident wherein the court reprimanded Neff after learning that he had eaten lunch with appellant and prosecution witness Allen Morrow during a recess. The record indicates that this reprimand occurred out of the presence of the jury and could hardly have prejudiced appellant. *See Commonwealth v. Whitson,* 461 Pa. 101, 334 A.2d 653 (1975).

SPAETH, Judge, dissenting:

I do not agree that defendant voluntarily and knowingly waived for an indefinite and unlimited period his right to a speedy trial as provided by Pa.R.Crim.P. 1100. An abiding temptation is to bend the rules when the case is nasty. Here, I suggest, the rules have been bent. Once bent, rules don't work well.

In *Commonwealth v. Coleman*, 477 Pa. 400, 383 A.2d 1268 (1978) (plurality opinion), Justice O'BRIEN wrote that the defendant's waiver was invalid because the form he signed "offer[ed] no explanation of what the right to a speedy trial involve[d]." 477 Pa. at 406, 383 A.2d at 1271.[1] The form was:

> Appellant next contends that the twenty-nine month delay between his filing post-trial motions on March 21, 1975 and the trial court's disposition of those motions on August 30, 1977, violated Pa.R.Crim.P. 302 and constituted cruel and unusual punishment. Pa.R.Crim.P. 302, since renumbered Pa.R.Crim.P. 1122, provided that post-trial motions for a new trial and in arrest of judgment must be decided within thirty days after argument except in unusual circumstances. Appellant's brief fails to allege, and our examination of the record does not disclose, the date on which appellant's post-verdict motions were argued. Additionally, the record does not reveal all the circumstances surrounding the unfortunate delay. We note, however, that appellant's trial consumed one week and covered 650 pages of transcript, which transcript was not prepared and filed until March 1, 1976. Appellant's post-trial motions raised twenty alleged errors and on at least one occasion, October 6, 1976, argument was delayed due to appellant's request for a continuance. On this record we decline to hold that Pa.R.Crim.P. 302 was violated. Appellant's assertion that he suffered cruel and unusual punishment as a result of the delay is untenable in view of the fact that appellant was free on bond the entire time between the jury's verdict and sentencing.
>
> Finally, appellant insists that his sentence was illegal and contrary to an alleged stipulation entered into by appellant and the Commonwealth. Appellant's sentence was well within the maximum permitted by statute and any agreement between the parties as to length of sentence was not binding on the sentencing judge.

1. The majority states in footnote 5 of its opinion that on the date of the continuance, "the trial court did not have the benefit of our Supreme Court's directive in *Commonwealth v. Coleman*, 477 Pa. 400, 406, 383 A.2d 1268, 1271 (1978), requiring that all continuances be granted for a specified period." (At ——, n. 5) This observation does not justify the majority's failure to follow *Coleman*. Neither did the trial court in *Coleman* "have the benefit of our Supreme Court's directive." A decision announcing a change in the law will be

I am aware and have been advised of the implications and consequences of the above application and (have/do not have) objection to the continuance. I am further aware of my right to a speedy trial and that a continuance shall cause a delay in having said criminal charges disposed of by the Court.

In *Commonwealth v. Thompson*, 262 Pa.Super. 211, 396 A.2d 720, 723 (1978), it was noted in the concurring and dissenting opinion that the defendant should not be held to have waived his Pa.R.Crim.P. 1100 rights because the colloquy, which was substantially identical to the waiver form in *Coleman*, did not specify for how long a period he was waiving his right to trial, nor did it inform him that the result of a successful Pa.R.Crim.P. 1100 motion would be final discharge. Most recently, in *Commonwealth v. Manley*, 491 Pa. 461, 421 A.2d 636 (1980), our Supreme Court vacated a judgment of sentence and discharged the defendant after finding that he "did not intend a blanket waiver of his Rule 1100 rights" by signing a statement that

I hereby certify, that on [December 9, 1974], Hon. Alex Bonavitacola orders case [continued] to January 27, 1975 [in] Room 625. [Defendant's] attorney on trial in [federal] court .. I the Defendant, waive the 270 day rule and as to speedy trial.

The Court held that "[o]n this record, we cannot conclude that the ... waiver evidences an intelligent decision by appellant to waive his Rule 1100 rights in toto. As in *Commonwealth v. Coleman, supra*, the statement signed by appellant contains no indication that he understood the

applied to cases pending on direct appeal, as this one was when *Coleman* was decided. *Commonwealth v. Williams*, 232 Pa.Super. 339, 331 A.2d 875 (1974). Furthermore, a decision that does not change the law but rather decides an issue of statutory construction not previously decided by an appellant court is regarded as part of that statute from the date of the statute's enactment. *Daniels v. State Farm Mutual Automobile Ins. Co.*, 283 Pa.Super. 336, 423 A.2d 1284 (1980); *See also Buradus v. General Cement Products*, 356 Pa. 349, 52 A.2d 205 (1947); *Harry C. Erb, Inc. v. Schell Construction Co., Inc.*, 206 Pa.Super. 388, 213 A.2d 383 (1965). The decision in *Coleman* was this sort of decision, involving as it did the construction of a rule of court.

nature and scope of the right which he was waiving. Although an on-the record colloquy is not necessary, we do require proof that the defendant understood the consequences of his act." (491 Pa. at 468, 421 A.2d at 640.)

The colloquy in the present case was as lacking as those in the above-cited cases. There is no indication that appellant understood by his statements at the colloquy that he was waiving his right to a speedy trial or to a discharge for violation of that right. The record does not support but contradicts the majority's assertion that by his statements at the colloquy, "appellant waived his Rule 1100 rights *indefinitely*. (At ——, emphasis added.) Appellant's statements at the colloquy, as quoted by the majority, make clear that he only agreed to delay trial for a short period of time—until the earliest possible trial date. Thus appellant said, "I want to go to trial. No one wants to go to trial right now any faster than me, I've had it. All right?" and, "The trial, I would like to start immediately, if I was prepared for it. If you can set a date for it, I would be perfectly happy." (6/12/74 N.T 14) Nothing in these statements or anywhere else in the record suggests that appellant understood, and agreed, that the Commonwealth could delay the trial *indefinitely*, or that the trial might occur, as it did in the present case, eight and one-half months later.

At most, appellant waived his Pa.R.Crim.P. 1100 rights until October 2, 1974, the date of the next listing of the case.[2] This, however, leaves unexplained the period from October 2 until March 10, when the trial was finally held. The record suggests that a considerable part of the delay during that period was attributable to the court or the Commonwealth. Nevertheless, there may have been periods of delay *prior* to the waiver that might have been excludable had the lower court reached the issue.

Therefore, I should vacate the judgment of sentence and remand with instructions to the lower court to make a new

2. *See Commonwealth v. Gardner, Jr.,* 282 Pa.Super. 70, 422 A.2d 832 (1980) (appellant signs Rule 1100 waiver, writing "please relist for February 7;" his waiver is limited to that date).

computation of the period during which appellant had to be brought to trial under Pa.R.Crim.P. 1100, and to enter such order, either reinstating the judgment of sentence or discharging appellant, as may be required.

CERCONE, President Judge, joins in this opinion.